**CENTRAL ARKANSAS MAINTENANCE, INC., Plaintiff/Cross–Appellant,**

v.

**The UNITED STATES, Defendant–Appellant,**

and

**Ferguson–Williams, Inc., Third Party Intervenor–Appellant.**

**Nos. 95–5059, 95–5075 and 95–5076.**

United States Court of Appeals,
Federal Circuit.

Oct. 19, 1995.

Patrick R. James, The Perroni Law Firm, Little Rock, Arkansas, argued for plaintiff/cross-appellant.

Frank W. Hunger, Assistant Attorney General, Commercial Litigation, Civil Litigation, Department of Justice, Washington, D.C., Dorann E. Banks, argued for the defendant-appellant. Of counsel were Jeanne E. Davidson and David M. Cohen.

Lynda Troutman O'Sullivan, Fried Frank Harris Shriver and Jacobson, Washington, D.C., argued for third party intervenor-appellant. Of counsel were Douglas W. Baruch and Catherine E. Pollack.

Before MAYER, MICHEL, and RADER, Circuit Judges.

MAYER, Circuit Judge.

The United States and Ferguson–Williams, Inc., appeal the judgment and order of the United States Court of Federal Claims, No. 94–746C (Jan. 25, 1995), enjoining the United States Army Corps of Engineers from awarding a contract for lake maintenance services to Ferguson–Williams. Central Arkansas Maintenance, Inc., cross-appeals. Because we conclude that the trial court exceeded its statutory authority to grant equitable relief, we affirm the judgment in part and vacate the injunction.

## Background

On October 28, 1993, the United States Army Corps of Engineers ("Corps" or "government") issued Request for Proposals No. DACW38–94–R–0003 ("RFP" or "solicitation"), for the operation, maintenance, and repair of government-managed facilities, grounds, and flood control structures at Greeson, Ouachita, and DeGray Lakes in southwest Arkansas. Thereafter, on November 17, 1993, potential offerors attended a site investigation at DeGray Lake, hosted by DeGray Lake manager Charles Hargett and Greeson Lake manager Jim Young. During the visit, Hargett told the participants to direct future communications to Young, who would begin managing DeGray Lake on or about November 30, 1993, the date of Hargett's retirement.

Hargett was a longtime employee of the Corps, with a total of 31 years of federal service. Since September 1984, he had served as Assistant Resource Manager, and

then as Resource Manager (the top Corps' official), of DeGray Lake. Hargett was in the latter position at the time the Corps was developing the Arkansas Lakes solicitation, and he assisted in its preparation.

In early January 1994, the president of one of Ferguson–Williams' proposed subcontractors, Marvin Pipes, contacted Hargett to ascertain his interest in working as a Ferguson–Williams supervisor on the Arkansas Lakes contract. Hargett said he would be interested in such a position, provided it did not create a conflict of interest. Shortly thereafter, Pipes asked Hargett for his resume. Ferguson–Williams included a version of Hargett's resume, enhanced to emphasize his experience at DeGray Lake, in its proposal, identifying Hargett as the proposed superintendent of DeGray Lake.

In response to the solicitation, eleven offerors submitted proposals, including Ferguson–Williams and Central Arkansas Maintenance, Inc. (CAM). During evaluation of the proposals, several Corps' evaluators raised questions about Hargett's potential employment with Ferguson–Williams. Their concerns were allayed by agency counsel, who determined that Hargett was not subject to any employment restrictions after his retirement. Agency counsel said that he was not a "procurement official" within the meaning of the Procurement Integrity Act, 41 U.S.C. § 423 (1988 & Supp. V 1993), because, in counsel's opinion, he had not participated substantially in the development of the RFP.

After the evaluation team completed its evaluation of the eleven initial offers, the contracting officer established the competitive range based on the team's recommendations. The three firms within the competitive range, including Ferguson–Williams, were invited to submit their best and final offers (BAFOs). CAM was not within the competitive range.

During evaluation of the BAFOs, evaluators again questioned Hargett's involvement with Ferguson–Williams. This time, however, agency counsel determined that there was a conflict of interest problem. Consequently, he wrote to Hargett, suggesting that he remove his name from Ferguson–Williams' proposal. Hargett did so.

In an effort to cure any possible taint to the procurement process resulting from the perceived conflict, the contracting officer requested a second round of BAFOs. Based on the new BAFOs, the contracting officer determined that he would award the contract to Ferguson–Williams.[1]

On September 27, 1994, CAM filed a complaint in the United States District Court for the Eastern District of Arkansas, requesting injunctive relief based on alleged improper and illegal activity in this procurement and in a separate acquisition being conducted by the Corps for the maintenance of four Mississippi Lakes. On October 12, 1994, that court transferred the case to the United States Court of Federal Claims pursuant to 28 U.S.C. § 1631 (1988).[2]

In the Court of Federal Claims, CAM argued that its proposal was improperly excluded from the competitive range and that the solicitation was unduly vague. CAM also claimed that because Ferguson–Williams had violated procurement integrity and conflict of interest statutes and regulations, it should be enjoined from further participation in this procurement and CAM should be placed in the competitive range. Alternatively, CAM argued that the RFP should be cancelled and resolicited.

The court held that CAM had waived its vagueness challenge when it failed to raise it before submitting its proposal. It nevertheless found the allegation meritless. The court upheld the exclusion of CAM's proposal from the competitive range, concluding that

---

1. On March 9, 1995, we granted Ferguson–Williams' motion to stay contract award pending this appeal.

2. The Court of Federal Claims subsequently transferred the portion of CAM's complaint pertaining to the Mississippi Lakes procurement to the United States District Court for the Northern District of Mississippi on October 21, 1994, be-

cause the contract had already been awarded. See 28 U.S.C. § 1491(a)(3) (1988); United States v. John C. Grimberg Co., 702 F.2d 1362, 1374 (Fed.Cir.1983) (in banc) (exercise of the equitable power granted to the Court of Federal Claims is limited to cases in which complaints are filed before the contracts have been awarded).

the contracting officer did not act arbitrarily in eliminating CAM's proposal from further consideration. CAM does not appeal either of these rulings.

However, the court also concluded that Hargett, Ferguson–Williams, and the contracting officer either violated, or were about to violate, provisions of the Procurement Integrity Act. The court ruled further that such violations, or imminent violations, did not taint the entire procurement and did not deprive CAM of its right to have its offer considered fairly and honestly. Consequently, it refused to order the Corps to place CAM in the competitive range or to begin the procurement process anew. Notwithstanding, the court permanently enjoined the award of the Arkansas Lakes contract to Ferguson–Williams "for failing to live up to the dictates of the Procurement Integrity Act and the other relevant conflict statutes and regulations." Slip op. at 59. Ferguson–Williams moved the court for reconsideration, challenging its authority to issue such an injunction. The court denied the motion.

On appeal, Ferguson–Williams and the United States contend that the court had no jurisdiction to award injunctive relief once it had concluded that the Corps had considered CAM's offer fairly and honestly and that the entire acquisition process was not tainted. Alternatively, they both argue that CAM lacked standing to pursue its conflict of interest allegations once the court rejected its challenge to the competitive range determination because its proposal was "ranked" seventh out of eleven offers and was not, therefore, within the "zone of active consideration" for award.[3]

### Discussion

The central issue is whether the Court of Federal Claims exceeded its statutory authority to grant equitable relief by enjoining the award of the Arkansas Lakes contract to Ferguson–Williams, after finding that CAM's offer had been considered fairly and honestly

and that any procurement integrity violations had not tainted the entire procurement. This issue raises a question of law, which we review de novo. *See Parcel 49C Ltd. Partnership v. United States,* 31 F.3d 1147, 1150 (Fed.Cir.1994).

■ All federal courts, except of course the Supreme Court, are creatures of statute, with jurisdictional reach only so far as Congress allows. U.S. Const. art. III, § 1; *Palmore v. United States,* 411 U.S. 389, 400–01, 93 S.Ct. 1670, 1677–78, 36 L.Ed.2d 342 (1973). This is true as well for the Court of Federal Claims, which enjoys only so much judicial power as Congress expressly permits. *Beck v. Secretary of HHS,* 924 F.2d 1029, 1036 (Fed.Cir.1991); *In re United States,* 877 F.2d 1568, 1571 (Fed.Cir.1989).

■ By the Tucker Act, Congress granted the Court of Federal Claims jurisdiction "to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (1988 & Supp. V 1993). This jurisdictional grant extends to suits brought by disappointed bidders, commonly called bid protests, challenging the proposed award of contracts based on alleged improprieties in the procurement process. *CACI, Inc.–Fed. v. United States,* 719 F.2d 1567, 1572–73 (Fed.Cir.1983). Jurisdiction in these cases arises from an alleged breach of "an implied contract to have the involved bids fairly and honestly considered." *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1367 (Fed.Cir.1983) (in banc). The government breaches this implied contract if its consideration of offers is found to be "arbitrary and capricious toward the bidder-claimant." *Keco Indus., Inc. v. United States,* 492 F.2d 1200, 1203 (Ct.Cl.1974); *see also Prineville Sawmill Co. v. United States,* 859 F.2d 905, 909 (Fed.Cir.1988).

If such a breach is found, Congress has granted the Court of Federal Claims the

---

**3.** Ferguson–Williams also maintains that the court erred in determining that there were any violations of the Procurement Integrity Act, and in enjoining award of the contract to it in the absence of a finding that any violations, assuming they occurred, affected the evaluations or

award decision. CAM, in its cross-appeal, argues in part that the court erred in not awarding it bid preparation costs after it had "prevailed" on its conflict of interest claims. In light of our disposition of the case, we need not address these issues.

power to award equitable relief not generally available in other areas within its jurisdiction. *See* 28 U.S.C. § 1491(a)(3) (1988); *Grimberg*, 702 F.2d at 1366. Specifically, the Tucker Act, as amended by the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 133(a), 96 Stat. 25, 40 (1982), provides in pertinent part: *"To afford complete relief on any contract claim* brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief." 28 U.S.C. § 1491(a)(3) (emphasis added); *see also Parcel 49C Ltd. Partnership*, 31 F.3d at 1153; *Prineville Sawmill*, 859 F.2d at 909. The "[u]se of 'jurisdiction' in subsection (a)(3) can be misleading. That subsection ... deals with the *power* of the court to grant a particular *remedy*.... Because the [Court of Federal Claims] certainly has subject matter jurisdiction, it is more accurate to speak of (a)(3) as granting equitable power than as granting 'equitable jurisdiction.' " *Grimberg*, 702 F.2d at 1366 n. 6.

■ Of particular relevance in determining whether the government has breached its implied contract, thus warranting the court's exercise of its injunctive power, is whether the government has violated any statute or regulation during the procurement process. *Keco*, 492 F.2d at 1204 (proven violations of statutes or regulations can be a ground for recovery in bid protests).[4] However, not all violations of statute and regulation are the same; only a "clear and prejudicial" violation of a procurement statute or regulation warrants relief. *CACI Field Servs., Inc. v. United States*, 854 F.2d 464, 466 (Fed.Cir.1988). Therefore, only violations that amount to a breach of the government's implied contract to consider an offer fairly and honestly will support the court's exercise of its injunctive powers. *See CACI, Inc.–Federal*, 719 F.2d at 1574.

The Court of Federal Claims explicitly found that CAM's proposal received full and fair consideration, and ruled that CAM was properly excluded from the competitive range. It further found that the procurement was not tainted by any procurement integrity violations. Therefore, the court refused to order the cancellation of the acquisition. The court concluded that although violations of the Procurement Integrity Act either occurred or were about to occur, the government did not breach its implied contract to consider CAM's offer fairly and honestly. Hence, CAM was entitled to no relief whatsoever. Nevertheless, the court exercised its injunctive power set forth in section 1491(a)(3) and enjoined contract award to Ferguson–Williams.

■ Ferguson–Williams and the United States couch their arguments here in terms of jurisdiction and standing, but the import of their arguments is that the Court of Federal Claims exceeded its statutory authority when it enjoined the government from awarding the Arkansas Lakes contract to Ferguson–Williams. We agree that the court had no power to enjoin the award because such power is to be used only to "afford complete relief" to an offeror whose proposal has not been given fair and honest consideration. Consequently, the Court of Federal Claims exceeded its equitable power in enjoining the award to Ferguson–Williams, an act that provided CAM with no relief at all.

■ The Senate Report on the Federal Courts Improvement Act of 1982 states that section 1491(a)(3) gives the Court of Federal Claims, "the ability to *grant litigants* complete relief." S.Rep. No. 275, 97th Cong., 2nd Sess. 22 (1982), *reprinted in* 1982 U.S.C.C.A.N. 11, 32 (emphasis added). The Senate Report states further that the court's injunctive power should be exercised "only in circumstances where the contract, if awarded, would be the result of arbitrary or capricious action by the contracting officials, to deny qualified firms the opportunity to com-

---

4. *Keco* set fourth three other considerations that contribute to a determination of arbitrary government conduct warranting relief: (1) subjective bad faith on the part of the government, (2) absence of a reasonable basis for the government decision, and (3) the amount of discretion afforded to the government by applicable statutes and regulations. *Id.* at 1203–04; *see also Prineville Sawmill*, 859 F.2d at 911.

pete fairly for the procurement award." *Id.* at 23, *reprinted in* 1982 U.S.C.C.A.N. 11, 33. Thus, Congress intended the court to use the equitable power of section 1491(a)(3) to grant qualified firms, which are parties determined to have been denied the opportunity to compete fairly for a government contract, injunctive relief. The court's exercise of its injunctive power in this case exceeds this purpose.

The trial court recognized that a disappointed offeror must prove that a prejudicial violation of a statute has occurred if it is to obtain permanent injunctive relief, but it distinguished between cases involving violations of "commonplace" procurement statutes and those turning on violations of "distinctly focused conflict of interest statutes," holding that it enjoys broader injunctive powers when faced with the latter. The court relied on *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961), which in deciding whether the government may disaffirm a contract which is infected by a conflict of interest, held that the public policy embodied in the conflict of interest statute there in question rendered the contract unenforceable. *Id.* at 565–66, 81 S.Ct. at 317.

That is not the issue we are dealing with. Rather, the question for us is whether the Court of Federal Claims had the power to enjoin the award of this contract under its limited grant of equitable authority. We do not read *Mississippi Valley*, a case decided prior to the enactment of section 1491(a)(3), as affecting the basis for the Court of Federal Claims to invoke its equitable authority. We recognize the importance of ensuring that the public's faith in the integrity of the procurement process is not compromised, but we see no authority for the Court of Federal Claims to exercise its injunctive powers absent a finding that the government has breached its implied contract to consider bids honestly and fairly. The government has substantial administrative, civil, and criminal enforcement authority under the Procurement Integrity Act to police the procurement process. *See* 41 U.S.C. § 423(h)–(j). If these remedies are insufficient, the responsibility for stronger measures lies with Congress. The court is ill-suited to the task.

In sum, Congress authorized the Court of Federal Claims to grant injunctions "[t]o afford complete relief on any contract claim brought before the contract is awarded." 28 U.S.C. § 1491(a)(3). CAM's claim was for breach of the implied-in-fact contract that the Corps would consider its offer fairly. Once the Court of Federal Claims determined that no such breach occurred and that CAM was entitled to no relief, it had no power to enjoin the Corps from awarding the contract to another offeror.[5]

### Conclusion

Accordingly, the judgment of the United States Court of Federal Claims is affirmed in part, and the injunction is vacated.

### COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART AND VACATED–IN–PART.*

---

5. In its cross-appeal, CAM argues that the court erred in refusing to admit evidence about the Mississippi Lakes procurement. Such rulings are within the sound discretion of the trial court and will be reversed on appeal only for a clear abuse of that discretion. *See, e.g., Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1547 (Fed.Cir. 1994); *cf. Keco*, 492 F.2d at 1207–08. CAM has not met that burden. The record does not establish that Hargett was involved in the development of the Mississippi Lakes procurement or was proposed as a lake superintendent for that acquisition. Nor does the record establish that CAM pursued any allegation of bias or favoritism by the Corps toward Ferguson–Williams that might make evidence about the Mississippi Lakes procurement relevant. Indeed, the court below stated that CAM barely, "if at all," touched upon the issue of bad faith, and went on to find a complete absence of malice or ill will on the part of the Corps. *Slip op.* at 60.