# United States Court of Appeals for the Federal Circuit


06-3144


NORBERTO PEREZ,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.


Stuart A. Kirsch, Assistant General Counsel-Litigation, American Federation of Government Employees, of Riverdale, Georgia, argued for petitioner. With him on the brief was Mark D. Roth, General Counsel, of Washington, DC.

Michael J. Dierberg, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Todd M. Hughes, Assistant Director.

Appealed from: Arbitrator Decision

# United States Court of Appeals for the Federal Circuit

06-3144

NORBERTO PEREZ,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

_____

DECIDED: March 16, 2007

_____

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and DYK, Circuit Judge.

Opinion for the court filed by Senior Judge FRIEDMAN, in which Judge NEWMAN joins. Dissenting opinion filed by Judge DYK.

FRIEDMAN, Senior Circuit Judge.

The petitioner, Norberto Perez, challenges an arbitrator's rejection of his contention that the Bureau of Prisons (the "Bureau") violated the Civil Service Reform Act of 1978, Pub. L. 95-454, 92 Stat 1111, ("Reform Act") when it suspended him indefinitely. He contends that in addition to giving him thirty-days notice of its proposed action, the Bureau also was required to determine that there was reasonable cause to believe he had committed a crime. The arbitrator correctly rejected this contention, and we therefore affirm.

I

Perez is a Correctional Counselor for the Bureau. On July 5, 2005, Perez received written notice from his supervisor that he would be suspended indefinitely pending an investigation into an inmate's allegation that Perez had helped smuggle drugs into the prison where he worked. The inmate alleged that Perez had provided him with drugs in return for money—an accusation an FBI report supported.

The notice stated that the suspension would occur no sooner than thirty days from its receipt. The notice also informed Perez that he had the right to respond in writing and orally to the proposed suspension, which Perez and his representative did. The Bureau suspended Perez indefinitely as of August 4, 2005—31 days after he received the notice.

Perez challenged his suspension by invoking the grievance procedure under the collective bargaining agreement. After an evidentiary hearing, the arbitrator ruled that the Bureau had complied with the statutory requirements by giving him thirty days notice, and was not required also to determine, as Perez contended, that there was reasonable cause to believe that Perez has committed a crime. The arbitrator therefore denied Perez's grievance. Federal Mediation and Conciliation Service Case No. 05-58351, 11-15 (Dec. 9, 2005).

II

A. This case involves the provisions of the Reform Act that govern adverse actions by the government against its employees. Subchapter II of Chapter 75 of Title 5 of the U.S. Code "applies to" five types of adverse actions, including removals,

reductions in grade or pay and "a suspension for more than 14 days."  5 U.S.C. § 7512(2).  Section 7513, captioned "Cause and Procedure," states in subsection (a) that

> an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service.

Subparagraph (b) provides that "[a]n employee against whom an action is proposed is entitled to" followed by four specified rights of the employee.  The first of these rights is

> (1)  at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action.

The employee also is entitled to at least seven days to answer the notice, has the right to have an attorney or other representative, and must receive "a written decision and the specific reasons therefor at the earliest practicable date."  5 U.S.C. § 7513(b)(2)-(4).

Perez has not challenged the arbitrator's determination that his suspension met the "efficiency of the service" standard in § 7513(a).  Perez's sole contention is that the arbitrator misinterpreted § 7513(b)(1) in ruling that, when thirty-days notice has been given, the government need not have reasonable cause to believe the employee has committed a crime before suspending the employee indefinitely.  Perez's contention finds no support in, and is inconsistent with, the structure and language of § 7513.

Section 7513(a) establishes the substantive standard justifying adverse action—promoting the efficiency of the service—and § 7513(b) prescribes the procedure to be followed in taking such action by defining the rights of affected employees.  The first

06-3144                                3

right of employees is to receive "at least 30-days written notice." The "unless" clause, which immediately follows the notice requirement, is a qualification of and limitation on the notice requirement. It is not, as Perez contends, a substantive requirement (in addition to that in subsection (a)) for the particular sub-category of indefinite suspension pending an investigation of an employee's possible criminal conduct.

In other words, what § 7513(b) requires is that an employee against whom adverse action of the kinds listed in § 7512 is proposed must be given 30-days written notice, except that such notice need not be given if the reasonable cause requirement of the "unless" clause is satisfied. Nothing in that clause even suggests, let alone requires, that a reasonable cause determination must be made before an employee may be indefinitely suspended on 30-days notice of such proposed action.

The legislative history of the Reform Act is consistent with that conclusion. The sole reference to § 7513(b)(1) we have found in that history is the following statement in the Senate Committee Report:

> Subsection (b) specifies the minimum rights of an employee against whom an adverse action is proposed. These are:
> 1. At least thirty days' advance written notice of the proposed action. The thirty day period may be reduced only when there is reasonable cause to believe the employee is guilty of a crime for which a sentence of imprisonment can be imposed.

S. Rep. No. 95-969, at 50 (1978), as reprinted in 1978 U.S.C.C.A.N. 2723, 2772. The last sentence in that statement supports our conclusion that the reasonable-cause provision relates only to authorizing reduction of the 30-day notice requirement. In any event, there is nothing in the legislative history that is inconsistent with our interpretation of the statute.

The regulations under the statute also support our interpretation. As 5 C.F.R. § 752.404 explains:

> Section 7513(b) of title 5 of the United States Code authorizes an exception to the 30 days' advance written notice when the agency has reasonable cause to believe that the employee has committed a crime for which a sentence of imprisonment may be imposed and is proposing a removal or suspension (including indefinite suspension).

B. Perez makes no attempt to explain how the statutory language possibly could be read to support his position. Instead, he relies primarily on broad general statements in four of our opinions which, taken out of context, appear to support his view. In each of those four cases, however, the suspended employee was given less than 30-days notice, so that the suspension could be sustained only if the reasonable cause requirement was satisfied. See Morrison v. Nat'l Sci. Found., 423 F.3d 1366, 1368 (Fed. Cir. 2005) ("The agency invoked the 'crime exception' to the thirty-day notice rule and gave Morrison only seven days to file a written reply."); Richardson v. U.S. Custom Serv., 47 F.3d 415, 417, 421 (Fed. Cir. 1995) (discussing the Custom Service's "summary suspension" of Richardson based on his indictment); Pararas-Carayannis v. Dep't of Commerce, 9 F.3d 955, 957 (Fed. Cir. 1993) (employee's suspension first proposed on May 14, 1992 and became effective June 8, 1992); Dunnington v. Dep't of Justice, 956 F.2d 1151, 1153 (Fed. Cir. 1992) ("On June 17, DOJ [the Department of Justice] made the decision to indefinitely suspend Dunnington effective the following day—14 days after DOJ first proposed the suspension.").

Broad statements in judicial opinions must be interpreted in light of the issue before the court, and cannot uncritically be extended to significantly different situations. N. States Power Co. v. United States, 224 F.3d 1361, 1367 (Fed. Cir. 2000) (citing

Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944) and Canadian Imperial Bank of Commerce v. Wells Fargo Bank, 811 F.2d 1490, 1494 (Fed. Cir. 1987)).  In the present case, in which Perez admittedly received 31-days written notice, the "reasonable cause" clause does not come into play.  We do not read those cases, as the dissent apparently does, as announcing the principle that indefinite suspensions may be imposed, even with 30-days notice, only if the reasonable-cause provision is satisfied.

Indeed, Richardson supports our interpretation of the statute rather than Perez's.  There we stated that § 7513(b)(1) is designed "simply to provide an exception to only one of the rights—30 days' advance written notice—available to an employee before an adverse action under Subchapter II may be taken."  47 F.3d at 419.

In his reply brief, Perez also relies on the following statement in the Board's opinion in Canevari v. Department of Treasury, 50 M.S.P.R. 311, 315 (1991):  "An agency may suspend an employee indefinitely to allow 'examination of the charged criminal involvement' if the agency has reasonable cause to believe an employee has committed a crime for which imprisonment may be imposed.  See Johnson v. U.S. Postal Serv., 37 M.S.P.R. 388, 393 (1988)."  It is unclear from the Board's Canevari opinion whether the agency gave the employee 30-days notice.  The Board's opinion contains no discussion of the statutory language, but merely cites the earlier decision in Johnson.  The Johnson case, however, involved the indefinite suspension of an employee who was given only 13-days notice.  See 37 M.S.P.R. at 393.

Board decisions are not binding precedent in this court, and we give those decisions only whatever weight their persuasiveness suggests is appropriate.  See Jones v. Dep't of Transp., 295 F.3d 1298, 1309 (Fed. Cir. 2002) ("[D]ecisions of the

Board are, of course, not binding authority upon this court."); see also, Miller v. Office of Pers. Mgmt., 449 F.3d 1374, 1379 (Fed. Cir. 2006) ("[W]e are not bound by . . . decisions of the Board."). The Board's statement in Canevari on which Perez relies was pure dictum which, for the reasons we have given, is unpersuasive. We therefore cannot give it any, much less controlling, weight in interpreting the statute. There is therefore no occasion to address Perez's contention that the Bureau did not have reasonable cause to believe that he had committed a crime for which imprisonment would be imposed. That issue is not present in this case.

Our decision here is a narrow one involving only the meaning of § 7513(a). We intimate no view on whether, if Perez is determined to not to have engaged in improper conduct and is restored to duty, he may obtain back pay (and other benefits) for his period of suspension. That is a claim that initially he must present to the Bureau. If he does so and the Bureau rejects the claim, he may then initiate whatever litigation may be appropriate to challenge such rejection. That, of course, is a different question from whether his indefinite suspension would promote the efficiency of the service—a question which as we have noted, Perez has not raised before us.

In sum, because the Bureau gave Perez 31-days notice before suspending him indefinitely, the "reasonable cause" provision § 7513(b)(1) is inapplicable.

There is nothing in our opinion that prevents any employee who believes that his indefinite suspension was arbitrary from obtaining review of such agency action. Since such a suspension would be "for more than 14 days," the employee could challenge it before the Board under 5 U.S.C. § 7513(d), see Thomas v. Gen. Servs. Admin., 756 F.2d 86, 89 (Fed. Cir. 1985), and obtain appropriate relief. The flaw the court finds in

Perez's argument is not, as the dissent suggests, that he cited the wrong statutory provision, but that the provision on which he relies is not applicable here. Section 7513(b) is solely a notice provision, and it provides an exception to the 30-day notice requirement for all the types of adverse actions specified in § 7512(2) if the agency has reasonable cause to believe an employee has committed a crime for which imprisonment may be imposed. The statute does not require the agency to have reasonable cause before it can indefinitely suspend an employee; it requires such cause only if the agency gives less than the 30-day notice. And if events suggest that the suspension was unwarranted, the employee may pursue the well-recognized remedies for improper agency action.

The substantive standard, set forth in § 7513(a), is that adverse actions against employees must "promote the efficiency of the service." Arbitrary action against an employee would not satisfy that standard. Perez, however, challenges his indefinite suspension not as arbitrary or capricious, or as not promoting the efficiency of the service, but as violating the reasonable cause "requirement" of § 7513(b). The Bureau did not violate that requirement because it arises only if the agency gives an employee less than 30-days notice, and the Bureau gave Perez 31 days notice. Although Perez argues that the Bureau did not have reasonable cause to believe he committed a crime, that contention was ancillary to, and dependent on, his principal argument that under § 7513(b) he could not be suspended unless here was such reasonable cause—an interpretation of the statute that is directly contrary to the explicit text of the statute.

## CONCLUSION

The decision of the arbitrator denying Perez's grievance is

<u>AFFIRMED</u>.

# United States Court of Appeals for the Federal Circuit

06-3144

NORBERTO PEREZ,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

DYK, <u>Circuit Judge</u>, dissenting.

The majority in this case refuses to address petitioner's claim that he was suspended without reasonable cause because, in briefing the issue, petitioner relied on decisions of this court which, in the majority's view, improperly relied on 5 U.S.C. § 7513(b) as the source of the reasonable cause requirement. In my view, the majority improperly declines to follow prior decisions of this court and unfairly faults the petitioner for relying on those prior decisions. I respectfully dissent.

I

Our prior decisions have recognized that, while the statute provides that agencies may suspend employees as a disciplinary measure, <u>see</u> 5 U.S.C. § 7512 (2000), it makes no specific provision for indefinite suspensions during investigations. <u>See</u> <u>Richardson v. U.S. Customs Serv.</u>, 47 F.3d 415, 419 (Fed. Cir. 1995). We have nonetheless held that agencies have the authority to indefinitely suspend employees, at least pending the outcome of criminal investigations, but that such suspensions are

adverse actions appealable to the Board. See Dunnington v. Dep't of Justice, 956 F.2d 1151, 1153-54 (Fed. Cir. 1992). If the criminal charges are dismissed, the employee must be reinstated, but the reinstatement does not confer the right to an award of back pay. See Richardson, 47 F.3d at 421. We have also held that employees suspended pending a criminal investigation are not entitled to the usual 30 days advance notice of the indefinite suspension adverse action. See Morrison v. Nat'l Sci. Found., 423 F.3d 1366, 1369 (Fed. Cir. 2005). This is because the provisions of § 7513(b)(1), which apply to all adverse actions, state that "[a]n employee against whom an action is proposed is entitled to—(1) at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action." 5 U.S.C. § 7513(b).

In this case, the employee alleged that he had been indefinitely suspended without reasonable cause and sought to recover back pay during the period of the suspension. The arbitrator rejected the claim. He found that "[n]owhere in the proposal or decisions [sic] letters did the Agency allege or maintain it had reasonable cause to believe [Perez] had committed a crime for which a sentence of imprisonment may be imposed." Pet'r App. 15. However, the arbitrator did not decide whether the agency had reasonable cause for the suspension. Instead, he concluded that all of the elements of § 7513 had been satisfied because 30 day notice was provided and that "[n]othing more is required under this federal statute." Id. at 13.

06-3144                                   2

II

Since 1993 we have repeatedly stated that reasonable cause is required for all indefinite suspensions. The District of Columbia Circuit in <u>Brown v. Department of Justice</u>, 715 F.2d 662 (D.C. Cir. 1983),[1] also reached the same conclusion. Perez here urges that these cases are inconsistent with the arbitrator's decision. I agree.

We first articulated the reasonable cause requirement in <u>Pararas-Carayannis v. Department of Commerce</u>, 9 F.3d 955 (Fed. Cir. 1993), where we sustained the Department of Commerce's indefinite suspension of an employee because there was reasonable cause.[2] We concluded that "[i]n order for the MSPB to sustain an indefinite suspension, the agency must establish by a preponderance of the evidence that it had reasonable cause to believe the employee committed a crime for which imprisonment may be imposed." <u>Id.</u> at 957. In clarifying the standard, we noted that "[i]n cases such as this, decisions of the MSPB have applied the same standard to the agency's decision to waive notice and the agency's decision to suspend." <u>Id.</u> at 957 n.4.

Following <u>Pararas-Carayannis</u>, in <u>Richardson</u> we confirmed that reasonable cause was required to indefinitely suspend an employee. There we acknowledged that the statute provides a "paucity of Congressional direction" thus requiring the "courts of

---

[1]    The District of Columbia Circuit had jurisdiction over the appeal because the petition for review was filed on June 30, 1982, before The Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, § 144, 96 Stat. 45 (codified at 5 U.S.C. § 7703(b)(1) (1982)), which granted this court exclusive jurisdiction over appeals from MSPB decisions, became effective. <u>Brown</u>, 715 F.2d at 664 n.1.

[2]    We concluded that "[t]he agency's reliance on the criminal charge, the detailed information in the affidavit, and the subsequent indictment was sufficient to support a conclusion that a reasonable cause existed to believe that petitioner committed a crime for which he was subject to imprisonment." <u>Pararas-Carayannis</u>, 9 F.3d at 958.

necessity [to] fill . . . in some of the missing parts." <u>Richardson</u>, 47 F.3d at 419. We read the statute "as establishing an independent standard for a limited adverse action," namely that an agency may suspend an employee when there is "reasonable cause for an agency to believe that the employee has committed . . . a crime, and, when the nature of the crime alleged relates to the employee's ability to perform his or her duties." <u>Id.</u> Finally, in <u>Morrison</u>, we noted that the question "whether there was reasonable cause . . . to believe a crime had been committed and whether the agency properly could have suspended" the employee was not before the court. <u>Morrison</u>, 423 F.3d at 1369. But we reiterated that:

> While 5 U.S.C. § 7513(b)(1) refers only to the agency's decision to waive the thirty-day notice period when proposing an adverse action, the same standard—that there is reasonable cause to believe the employee committed a crime for which a sentence of imprisonment may be imposed—has been applied as well to the agency's decision to impose an indefinite suspension.

<u>Id.</u> at 1368-69 n.*.

The District of Columbia Circuit's decision in <u>Brown</u>, 715 F.2d 662, construed the statute in the same way. In that case, the court rejected the employee's claim that he had been improperly suspended based on an indictment for criminal conduct. <u>Id.</u> at 667. In finding that a substantive reasonable cause requirement exists, the District of Columbia Circuit reasoned that "[i]f 'reasonable cause to believe the employee has committed a crime' were not a substantive basis for suspension, it would be superfluous to include a special notice provision for that situation." <u>Id.</u> at 666. The court concluded that "we believe an agency can justify its suspension of an employee by proving that it had reasonable cause to believe the employee had committed a work-related crime." <u>Id.</u>

at 667.  However, it held that "once an employee is indicted on job-related charges . . . an agency has the 'reasonable cause' to justify suspending an employee."  Id.

While § 7513(b)(1) standing alone does not compel a reasonable cause requirement, it seems to me quite clear that § 7513 assumes the existence of a reasonable cause requirement.  In any event, I do not read our cases or Brown as resting primarily on an interpretation of § 7513(b)(1).  In my view, our earlier cases rest on a bedrock principle of administrative law, reflected in the Administrative Procedure Act ("APA"), 60 Stat. 237 (1946), 5 U.S.C. §§ 701-706 (2000), and in cases long predating the APA, that agencies cannot engage in arbitrary action and that arbitrary action will be invalidated on judicial review.  See 5 U.S.C. § 706; see, e.g., Am. Tel. & Tel. Co. v. United States, 299 U.S. 232, 236-37 (1936).  Those principles are incorporated into the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1201 et seq., itself in the general merit system principles set forth in § 2301.  See 5 U.S.C. § 2301 (2000).  Section 2301 provides that "[e]mployees should be protected against arbitrary action, personal favoritism, or coercion for partisan political purposes."  Id. § 2301(b)(8)(A).  The legislative history of the CSRA illustrates the importance of these principles in governing agency actions by stating that § 2301 "places on federal agencies  . . .  an affirmative mandate to adhere to merit system principles."  S. Rep. No. 95-969, 19, 1978 U.S.C.C.A.N. 2723, 2741 (July 10, 1978).  Moreover, it is the role of the MSPB to "safeguard[] the effective operation of the merit principles in practice." Id. at 6, 1978 U.S.C.C.A.N. at 2728.

We have held that the principles themselves do not create an independent cause of action when there is an adverse action.  See Phillips v. Gen. Servs. Admin., 917 F.2d

1297, 1298 (Fed. Cir. 1990). Nonetheless, when the statute provides jurisdiction over an adverse action, the agency's decision must be consistent with these merit system principles. In Wilburn v. Department of Transportation, 757 F.2d 260, 262 (Fed. Cir. 1985), we specifically held that an adverse action that was inconsistent with the principles had to be set aside. We stated that "the purpose of [§ 2301] is to protect employees against political coercion, discrimination, personal favoritism and unfair, arbitrary or illegal action" and noted that "the linchpin of federal personnel management is fairness." Id. Thus, we set aside the arbitrary agency action because it "undercut[] the merit system principles on which the [CSRA] was founded." Id.; Phillips, 917 F.2d at 1298 ("Merit systems principles can be used to interpret a law, rule, or regulation asserted to be violated by a government agency personnel practice."). Indeed, at oral argument, government counsel conceded that the government "absolutely [could] not" "suspend [someone] indefinitely . . . arbitrarily."

An action taken without reasonable cause is plainly an arbitrary action. For example, when determining whether the government acted arbitrarily in reviewing bids for government contracts, this court has stated that government conduct is arbitrary when there is an "absence of a reasonable basis for the government decision." Ctr. Ark. Maint., Inc. v. United States, 68 F.3d 1338, 1342 n.4 (Fed. Cir. 1995); see Keco Indus., Inc. v. United States, 492 F.2d 1200, 1203-04 (Ct. Cl. 1974).

Here the arbitrator had jurisdiction over Perez's indefinite suspension. He was thus obligated to determine whether the suspension was arbitrary and erred in declining to address whether the agency had reasonable cause.

III

06-3144                                6

The majority's response is, in my view, untenable. First, the majority dismisses the statements in our prior cases and in Brown as mere dictum on the theory that in each case less than 30 days notice was provided. The majority states that Perez "relies primarily on broad general statements in four of our opinions which, taken out of context, appear to support his view. In each of those four cases, however, the suspended employee was given less than 30-days notice, so that the suspension could be sustained only if the reasonable cause requirement was satisfied." Maj. Op., 5. The majority also concludes that the clear statements in our cases, to the effect that reasonable cause is required in all situations, are based on a misconstruction of the statute because § 7513(b)(1) itself does not impose a reasonable cause requirement.

The majority has no authority to overrule our prior panel decisions even if they relied on the wrong provision of the statute (which, in my view, the prior decisions did not). See Hometown Fin., Inc. v. United States, 409 F.3d 1360, 1365 (Fed. Cir. 2005). Those decisions cannot be dismissed as "dictum." At a minimum, our decisions in Pararas-Carayannis and Richardson hold that reasonable cause is required in all cases.

Second, the majority appears to agree that there may in fact be a reasonable cause requirement imposed by other provisions of the statute, but the majority states that "the provision on which [Perez] relies is not applicable here." Maj. Op. 8. However Perez clearly raised the reasonable cause issue. Perez squarely asked this court to decide "whether the 'reasonable cause' standard should be applied to indefinite suspensions" and "whether the [Bureau] satisfied that standard in this case." Pet'r Br. 2. He stated that this court has established "clear precedents . . . regarding reasonable cause requirements for an indefinite suspension" and argued that the facts of his case

"clearly [do] not satisfy the reasonable cause standard established by the Federal Circuit." Pet'r Br. 15, 19.

The majority appears to be saying that petitioner's mistake was relying on our prior cases because those cases, in turn, improperly relied on § 7513(b) as the source of the reasonable cause requirement. Even if those decisions could be disregarded by the panel, I think it is profoundly unfair to hold that the employee did not properly raise the reasonable cause requirement because he relied on our prior decisions that, in the majority's view, cited the wrong section of the statute. The majority itself recognizes that those decisions contain explicit language requiring reasonable cause. As the First Circuit recently stated, when the law is "poorly developed and confusing," "a litigant is not expected to guess just how a court will explain its result." Broadley v. Mashpee Neck Marina, Inc., 471 F.3d 272, 276-77 (1st Cir. 2006); see also England v. La. State Bd. of Med. Exam'rs, 375 U.S. 411, 422-23 (1964).

Because in my view the arbitrator erroneously found that there was no reasonable cause requirement, I would vacate and remand for further proceedings under the correct standard.