# United States Court of Appeals for the Federal Circuit

2009-5091


RESOURCE CONSERVATION GROUP, LLC,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Warren K. Rich, Rich and Henderson, P.C., of Annapolis, Maryland, argued for plaintiff-appellant. With him on the brief was Anthony G. Gorski.

Christopher A. Bowen, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Kirk T. Manhardt, Assistant Director. Of counsel on the brief was Joshua D. Harvey, United States Department of the Navy, Naval Facilities Engineering Command, of Washington, DC.

Appealed from: United States Court of Federal Claims

Judge Susan G. Braden

# United States Court of Appeals for the Federal Circuit

2009-5091

RESOURCE CONSERVATION GROUP, LLC,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 08-CV-768, Judge Susan G. Braden.

_____

DECIDED: March 1, 2010

_____

Before LOURIE, DYK, <u>Circuit Judges</u>, and KENDALL,[*] <u>District Judge</u>

DYK, <u>Circuit Judge</u>.

Resource Conservation Group ("RCG") appeals from a final judgment of the United States Court of Federal Claims dismissing RCG's action for lack of subject matter jurisdiction. <u>Res. Conservation Group, LLC v. Dep't of Navy</u>, 86 Fed. Cl. 475, 486 (2009). We affirm in part, reverse in part, and remand.

BACKGROUND

In 1913, the Naval Academy purchased land in Gambrills, Maryland, for the purpose of establishing and operating a dairy farm to provide milk to the Academy

_____

[*] Honorable Virginia M. Kendall, District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

because of concerns about the safety of the commercial milk supply. In the 1990's, the Naval Academy determined that it would be cheaper to purchase milk commercially, and that the commercial milk supply was safe. Consequently, Congress included a provision in the Defense Authorization Act for Fiscal Year 1998 that provided that the Navy was authorized to "terminate or reduce the dairy or other operations conducted at the Naval Academy dairy farm located in Gambrills, Maryland," but banned sale of the property and required that its "rural and agricultural nature" be maintained. See National Defense Authorization Act for Fiscal Year 1998, Pub. L. No. 105-85, § 2871, 111 Stat. 1629, 2015-16 (1997) (codified at 10 U.S.C. § 6976).[1]

On November 28, 2005, the Navy issued a Request of Interest ("ROI") for proposals to lease the dairy farm property. On January 16, 2006, RCG responded with an Expression of Interest. The Navy, after receiving the expressions of interest from RCG and other interested parties, issued a Notice of Availability for Lease, and requested that all bids be submitted by March 19, 2007.

On February 6, 2007, interested bidders toured the property. With the Navy's written permission, RCG entered the property a second time on February 27, 2007, to survey and test the area for the presence of sand and gravel. The Navy understood that RCG was entering the property for the purposes of testing for the presence of sand

---

[1] The statute provided that "the real property containing the dairy farm . . . may not be . . . transferred or otherwise disposed of by the Navy or any Federal Agency . . . and . . . shall be maintained in its rural and agricultural nature." 10 U.S.C. § 6976(a)(2). Furthermore, it provided that "[a]ny lease of property at the Naval Academy dairy farm shall be subject to a condition that the lessee maintain the rural and agricultural nature of the leased property." 10 U.S.C. § 6976(b)(2).

and gravel.[2] RCG then prepared a site analysis, designed mining plans for the property, and submitted a formal lease proposal prior to the March 19, 2007, deadline. The proposal stated that RCG proposed to lease the property in order to mine it for sand and gravel.

On April 30, 2007, a Navy Contracting Officer informed RCG that its proposal did not fall within the scope of the solicitation, because disposal of real property was prohibited. The contracting officer reasoned that embedded sand and gravel constitutes real property pursuant to 41 C.F.R. § 102-71.20,[3] that mining of sand and gravel constituted disposal of real property, and that 10 U.S.C. § 6976 did not authorize "disposal" of real property. Accordingly, RCG's proposal would not be considered. In a later debriefing, the Navy asserted that it had no obligation during the pre-bid preparatory process to advise RCG that its bid would be unauthorized and did not qualify for review or evaluation.

RCG first filed a bid protest with the General Accounting Office ("GAO"). The GAO is authorized to decide bid protests concerning an alleged violation of a procurement statute or regulation. See 31 U.S.C. § 3552(a). The Competition in Contracting Act of 1984, Pub. L. No. 98-369, § 2741, 98 Stat. 494, 1199-1203 (codified

---

[2] See Transcript of Record at 9-11, Res. Conservation Group, 86 Fed. Cl. 475 (No. 08-768C).

[3] The regulation defines real property for the purposes of the General Services Administration's real property policies to include "embedded gravel, sand, or stone." 41 C.F.R. § 102-71.20. Additionally, other relevant federal regulations also appear to treat disposal of sand and gravel as disposal of real property. See, e.g., 32 C.F.R. § 644.501 (Department of Army regulation defining standing timber, embedded gravel, sand, and stone as "real property").

at 31 U.S.C. §§ 3551-56) defines a "protest" to include "a written objection by an interested party to . . . [a] solicitation or other request by a Federal agency for offers for a contract for the procurement of property or services," "[t]he cancellation of such a solicitation or other request," "[a]n award or proposed award of such a contract," or "[a] termination or cancellation of an award of such a contract." 31 U.S.C. § 3551(1). The GAO dismissed RCG's protest, concluding that "[a] solicitation of offers to lease government-owned land is not a procurement of property or services by a federal agency; thus it is not encompassed within our [Competition in Contracting Act of 1984] bid protest authority." Res. Conservation Group, LLC, B-310831 (Comp. Gen. Nov. 28, 2007).

On October 24, 2008, RCG filed suit in the Court of Federal Claims alleging breach of an implied contract of fair and honest consideration, and violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. RCG sought recovery of bid preparation costs and fees in the amount of $500,000 for the breach of the implied contract. It appears that RCG was not challenging the actual award of the contract, but rather sought recovery for damages incurred due to the government's failure to timely apprise RCG that its interpretation of 10 U.S.C. § 6976 foreclosed RCG's bid.[4]

---

[4]    See Complaint at 5, Res. Conservation Group, 86 Fed. Cl. 475 (2009) (No. 08-768C) ("The Navy breached the implied contract to judge honestly and fairly all bids submitted in response to the solicitation by disqualifying RCG with information that it knew or should have known, but failed to disclose to RCG, before RCG incurred the expenses of composing and submitting the formal proposal.").

Additionally, RCG alleged that the Navy misinterpreted 10 U.S.C. § 6976 in refusing to consider its bid.[5]

The Court of Federal Claims held that it lacked jurisdiction under 28 U.S.C. § 1491(b)(1) to adjudicate bid protests involving leases of land where the government is the lessor, because such an action is not "in connection with a procurement or proposed procurement." Res. Conservation Group, 86 Fed. Cl. at 486. The court also held that the enactment of 28 U.S.C. § 1491(b) by the Administrative Dispute Resolution Act ("ADRA"), Pub.L. No. 104-320, § 12, 110 Stat. 3870, 3874-76 (1996), had impliedly repealed the right to sue under an implied-in-fact contract pursuant to 28 U.S.C. § 1491(a)(1), the general Tucker Act jurisdictional provision. Res. Conservation Group, 86 Fed. Cl. at 484-85. With respect to RCG's APA claim, the Court of Federal Claims held that it lacked jurisdiction to review an agency decision under the APA (an issue not raised on appeal). Id. at 487. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

RCG argues that 28 U.S.C. § 1491(b) provides a jurisdictional basis for its claim. RCG alternatively argues that review of bid protests under the implied-in-fact contract of fair and honest consideration pursuant to 28 U.S.C. § 1491(a) survived the enactment of the ADRA and that a breach of the implied-in-fact duty remains a viable theory of recovery. We review decisions of the Court of Federal Claims regarding subject matter jurisdiction de novo. See Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

---

[5]     Complaint at 4, Res. Conservation Group, 86 Fed. Cl. 475 (2009) (No. 08-768C) ("The Navy erroneously interpreted 10 U.S.C. § 6976 to mean that a leasehold to a mining operation is outside its authority because 'mining' is the equivalent of the 'disposal' of property. Nothing in section 6976 states that the Dairy Farm could not be leased to a mining operation.").

To assess these arguments, we begin by providing an overview of the legislative history of section 1491(b).

I

Under the Tucker Act, the Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). This jurisdictional grant was construed, prior to the enactment of the ADRA, to authorize suits by disappointed bidders challenging contract awards based on alleged improprieties in the procurement process. See Southfork Sys., Inc. v. United States, 141 F.3d 1124, 1132 (Fed. Cir. 1998) (citing Cent. Ark. Maint., Inc. v. United States, 68 F.3d 1338, 1341 (Fed Cir. 1995)). The jurisdictional basis for such suits was the alleged breach of "an implied contract to have the involved bids fairly and honestly considered." Id. (quoting United States v. John C. Grimberg Co., 702 F.2d 1362, 1367 (Fed. Cir. 1983) (en banc)); see Heyer Prods. Co. v. United States, 140 F.Supp. 409, 414-15 (Ct. Cl. 1956).

Following passage of the APA in 1946, the District of Columbia Circuit in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), held that challenges to awards of government contracts were reviewable in federal district courts pursuant to the judicial review provisions of the APA. Id. at 869-75.[6] Thus, for a period both the district courts and the Court of Claims exercised jurisdiction over bid protests on two

---

[6] Prior to the enactment of the APA, federal courts were foreclosed from hearing such actions under Perkins v. Lukens Steel Co., 310 U.S. 113, 126-27 (1940), in which the Supreme Court held that disappointed bidders lacked standing to bring such challenges in federal courts.

separate theories.[7]  The legislative history of the ADRA indicates that the enactment § 1491(b)(1) was motivated by a concern with forum shopping and fragmentation of government contract law.  As the original sponsor of the jurisdictional provision (Senator Cohen) stated, "It is my belief that having multiple judicial bodies review bid protests of Federal contracts has resulted in forum shopping as litigants search for the most favorable forum.  Additionally, the resulting disparate bodies of law between the circuits has created a situation where there is no national uniformity in resolving these disputes."  See 142 Cong. Rec. S11848 (daily ed. Sept. 30, 1996) (statement of Sen. Cohen).

The ADRA expanded the jurisdiction of the Court of Federal Claims to hear bid protest cases, ultimately giving the court exclusive jurisdiction to review "the full range of procurement protest cases previously subject to review in the federal district courts and the Court of Federal Claims."  H.R. Rep. No. 104-841, at 10 (1996) (Conf. Rep.).[8]  The ADRA also directed the court to use the standards of review provided by the APA in reviewing the bid protest suits.  28 U.S.C. § 1491(b)(4).

---

[7]    The scope of review by the Court of Claims, however, was limited.  Before 1982, review "was narrow and an aggrieved party was typically limited to monetary relief," such as costs associated with undertaking the bidding process. See Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1078 (Fed. Cir. 2001); Keco Indus., Inc. v. United States, 492 F.2d 1200, 1203-04 (Ct. Cl. 1974).

[8]    For a period, the ADRA allowed "both federal district courts and the Court of Federal Claims to hear 'the full range of cases previously subject to review in either system.'" Emery Worldwide Airlines, 264 F.3d at 1079 (quoting 142 Cong. Rec. S11849 (daily ed. Sept. 30, 1996) (statement of Sen. Levin)).  However, a sunset provision terminated the federal district courts' jurisdiction in 2001, eventually channeling all judicial review of procurement protests to the United States Court of Federal Claims. See ADRA § 12(d), 110 Stat. at 3874-76.

With this background in mind, we turn to the arguments raised by the parties in this case.

II

We first consider whether RCG's claim falls within the jurisdiction conferred by section 1491(b)(1), the new jurisdictional provision enacted by the ADRA. We conclude that the Court of Federal Claims correctly held that it does not.

Section 1491(b)(1) grants the Court of Federal Claims jurisdiction

to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation <u>in connection with a procurement or a proposed procurement</u>.

28 U.S.C. § 1491(b)(1) (emphasis added). Initially, we consider the meaning of the phrase "in connection with a procurement or a proposed procurement."

In construing statutory language, we look to dictionary definitions published at the time that the statute was enacted.[9] At the time that the ADRA was enacted in 1996, the definition of "procurement contract" was "[a] government contract with a manufacturer or supplier of goods or machinery or services under the terms of which a sale or service is made to the government." Black's Law Dictionary 1208 (6th ed. 1990). "Procure" was defined as "to get possession of; obtain, acquire." Webster's Third New International Dictionary 1809 (1993). These definitions of "procurement" and of "procure" signify the

---

[9] See <u>Carcieri v. Salazar</u>, 129 S. Ct. 1058, 1064 (2009) (referring to Black's Law Dictionary and Webster's New International Dictionary for definition of "now" at the time that the Indian Reorganization Act was enacted); <u>MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.</u>, 512 U.S. 218, 228 (1994) (referring to Webster's New International Dictionary and Webster's Collegiate Dictionary for definition of "modify" at the time the Communications Act was enacted).

act of obtaining or acquiring something, in the context of acquiring goods or services. It strains the ordinary meaning of "procurement" to extend that definition to encompass a situation in which it is the government that is seeking to lease its own property.

Moreover, although Congress did not define "procurement" in the Tucker Act, it did define "procurement" in 41 U.S.C. § 403(2), related to the establishment of the Office of Federal Procurement Policy, an office within the Office of Management and Budget that plays a central role in shaping the policies and practices federal agencies use to acquire goods and services. Section 403(2) states that procurement "includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." 41 U.S.C. § 403(2) (emphasis added). In Distributed Solutions, Inc. v. United States, 539 F.3d 1340 (Fed. Cir. 2008), we concluded that the definition of "procurement" in 41 U.S.C. § 403(2) should be utilized in determining the scope of section 1491(b)(1), as the statutory provisions related to the establishment of the Office of Federal Procurement Policy "give overall direction for federal procurement policies, regulations, procedures, and forms." 539 F.3d at 1345. The process involved in soliciting lessees for government-owned property cannot be characterized as a "process of acquiring property or services." We note also that the GAO, in construing the "procurement" language, concluded that "[a] solicitation of offers to lease government-owned land is not a procurement of property or services by a federal agency; thus it is not encompassed within our [Competition in Contracting Act of 1984] bid protest authority." Res. Conservation Group, B-310831 (Comp. Gen. Nov. 28, 2007).

Additionally, there is no indication in the legislative history that the ADRA was intended to deal with nonprocurement protests. Throughout the legislative history, section 1491(b)(1) is described as applying to "procurement." See, e.g., 142 Cong. Rec. S6156 (daily ed. June 12, 1996) (statement of Sen. Cohen, original sponsor) ("[This] amendment is designed to increase the efficiency of our procurement system by consolidating jurisdiction over bid protest claims in the Court of Federal Claims." (emphasis added)); H.R. Rep. No. 104-841, at 10 ("This section consolidates federal court jurisdiction for procurement protest cases in the Court of Federal Claims." (emphasis added)); 142 Cong. Rec. S11849 (daily ed. Sep. 30, 1996) (statement of Sen. Levin) ("[T]he bill would address the . . . issue of judicial jurisdiction over procurement protests." (emphasis added)). The issue of nonprocurement bid protests is mentioned nowhere in the legislative history.[10]

The government agrees that the "procurement" language in the statute is limited to the procurement of goods and services. But in an apparent effort to support its

---

[10] The fact that as part of the ADRA Congress repealed former section 1491(a)(3), and enacted its substance as section 1491(b)(2), does not suggest that Congress viewed section 1491(b)(1) as encompassing nonprocurement cases. Section 1491(a)(3) provided: "To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief." Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, § 133, 96 Stat. 25, 39 (current version at 28 U.S.C. § 1491). While that section was not on its face limited to procurement cases, the legislative history of that section enacted in 1982 suggests that Congress intended it to apply only in the procurement context. See Federal Courts Improvement Act of 1981, S. Rep. No. 97-275, at 23 (1981) (amendment described as "conferring jurisdiction upon the Claims Court to award injunctive relief in the pre-award stage of the procurement process"); see generally John C. Grimberg Co., 702 F.2d at 1372 (discussing legislative history of section 1491(a)(3) and the court's new jurisdiction "to award injunctive relief in the preaward stage of the procurement process" (emphasis added)).

argument discussed below that section 1491(b)(1) provides the exclusive remedy for both procurement and nonprocurement solicitations, the government argues that the procurement limitation only applies to challenges to "statutes and regulations" and not to challenges of "awards" and "solicitations." It suggests that RCG could somehow secure relief if RCG were "to object to either the <u>award</u> or the <u>solicitation</u>. Those are not governed by 'in connection with a procurement.'" Oral Arg. 13:23-13:30. This convoluted argument makes no sense, and is based entirely on the theory of the last antecedent, i.e., that the "procurement" language appears immediately after the "any violation of statute or regulation" language. <u>See, e.g.</u>, <u>Anhydrides & Chems, Inc. v. United States</u>, 130 F.3d 1481, 1483 (Fed. Cir. 1997) (holding that referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent, which consists of "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence") (citations omitted). But we have made clear that that doctrine provides only marginal assistance, and is overcome by other factors showing a different meaning. <u>Finisar Corp. v. DirecTV Group., Inc.</u>, 523 F.3d 1323, 1336 (Fed. Cir. 2008). Here it is clear, for the reasons described above, that 1491(b)(1) in its entirety is exclusively concerned with procurement solicitations and contracts. Moreover, it is quite unlikely that Congress would have allowed the Court of Federal Claims to exercise jurisdiction in nonprocurement bid protests in the case of a challenge to an award, proposed award, or solicitation, but not in the case of a challenge to a violation of a statute or regulation.

Thus, the Court of Federal Claims was correct in holding that relief under 1491(b)(1) is unavailable outside the procurement context.

We next address whether the implied-in-fact contract jurisdiction under 28 U.S.C. § 1491(a)(1) that existed prior to 1996 survived the enactment of the ADRA, a question that we had previously reserved in Emery Worldwide Airlines, 264 F.3d 1071, 1081 n.9 (Fed. Cir. 2001), and Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 n.6 (Fed. Cir. 2001). Contrary to the Court of Federal Claims, we conclude that implied-in-fact contract jurisdiction does survive as to claims where the new statute does not provide a remedy.

Before enactment of section 1491(b)(1), the Court of Federal Claims exercised jurisdiction over solicitations for the sale of government property, just as it did in the procurement area.[11] The new statute on its face does not repeal the earlier jurisdiction. The government argues, however, that continuation of the implied-in-fact jurisdiction would be inconsistent with the purposes of the ADRA, which clearly was designed to place all bid protest challenges in a single court (after a sunset period) under a single standard (the APA standard).

We agree that Congress intended the 1491(b)(1) jurisdiction to be exclusive where 1491(b)(1) provided a remedy (in procurement cases). The legislative history makes clear that the ADRA was meant to unify bid protest law in one court under one standard. However, it seems quite unlikely that Congress would intend that statute to

---

[11] See, e.g., Prineville Sawmill Co. v. United States, 859 F.2d 905, 909 (Fed. Cir. 1988) (holding that the Claims Court had jurisdiction to review the Forest Service's actions in rejecting a responsive bid it received in connection with the sale of federally owned timber, as an invitation for bids issued by the government carries "an implied contractual obligation to fairly and honestly consider all responsive bids"); Monchamp Corp. v. United States, 19 Cl. Ct. 797, 800-02 (1990) (deciding merits of case in which plaintiff alleged that the Forest Service failed to consider its bid fairly).

deny a pre-existing remedy without providing a remedy under the new statute. See, e.g., Davis v. Passman, 442 U.S. 228, 247 (1979) (holding that by enacting an amendment to the Civil Rights Act of 1964 which protects federal employees from discrimination, Congress did not intend to foreclose pre-existing alternative remedies available to those expressly unprotected by the statute). Indeed, the Conference Report to the ADRA provides:

> It is the intention of the Managers to give the Court of Federal Claims exclusive jurisdiction over the full range of procurement protest cases previously subject to review in the federal district courts and the Court of Federal Claims. This section is not intended to affect the jurisdiction or standards applied by the Court of Federal Claims in any other area of law.

H.R. Rep. No. 104-841, at 10 (emphases added). This passage confirms that Congress did not intend to alter or restrict the Court of Federal Claims' existing jurisdiction in cases not covered by the new statute. Similarly, the repeal of district court jurisdiction over bid protests in the ADRA made clear that the district court jurisdiction was repealed only where the new jurisdiction was substituted. Section 12(d) of the Act provided that "the jurisdiction of the district courts of the United States over the actions described in section 1491(b)(1) of title 28, United States Code . . . shall terminate on January 1, 2001 unless extended by Congress." ADRA § 12(d), 110 Stat. at 3874-76.[12] We conclude that the court's implied-in-fact jurisdiction over nonprocurement solicitations survived the enactment of 1491(b)(1).

Admittedly, dividing jurisdiction between the Court of Federal Claims and the district courts for nonprocurement bid protests may lead to similar problems that led to

the enactment of 1491(b)(1). However, if the statute is to be amended to solve this problem, that amendment must be undertaken by Congress and not this court.

Finally, the government argues that we should affirm on the merits because its construction of 10 U.S.C. § 6976 is correct. We decline to construe that statute for the first time on appeal, but we note that even if the government's construction were correct, that would not necessarily defeat RCG's claim. That claim is based in part on the government's alleged unfairness in failing to advise RCG early in the process of the construction of section 6976 that made its proposed bid unacceptable. We express no opinion on whether the government was obligated to inform potential bidders of the perceived limitations imposed by 10 U.S.C. § 6976.

## CONCLUSION

We conclude that the Court of Federal Claims did not have jurisdiction under 28 U.S.C. § 1491(b)(1), but had jurisdiction under section 1491(a)(1) because the implied-in-fact contract jurisdiction in nonprocurement cases that existed prior to 1996 survived the enactment of the ADRA.

<u>AFFIRMED IN PART</u>, <u>REVERSED IN PART</u>, AND <u>REMANDED</u>

## COSTS

No costs.

---

[12] Thus, a disappointed bidder in a nonprocurement case could also theoretically bring its bid protest challenge in a federal district court, since the ADRA only repealed jurisdiction over procurement cases.