# United States Court of Appeals for the Federal Circuit

_____

**CROMAN CORPORATION,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee,*

AND

**MOUNTAIN WEST HELICOPTERS, LLC,**
*Defendant,*

AND

**SILLER HELICOPTERS,**
*Defendant-Appellee,*

AND

**COLUMBIA HELICOPTERS,**
*Defendant-Appellee.*

_____

2012-5138

_____

Appeal from the United States Court of Federal Claims in No. 12-CV-0075, Judge George W. Miller.

_____

Decided: July 31, 2013

_____

ALAN I. SALTMAN, Smith, Currie & Hancock LLP, of Washington, DC, argued for plaintiff-appellant.

SCOTT D. AUSTIN, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee, United States. With him on the brief were STUART F. DELERY, Deputy Principal Assistant Attorney General, JEANNE E. DAVIDSON, Director, and RUSSELL J. UPTON, Trial Attorney. Of counsel on the brief was ELIN M. DUGAN, Senior Counsel, Office of the General Counsel, General Law and Research Division, United States Department of Agriculture, of Washington, DC.

_____

Before MOORE, BRYSON, and WALLACH, *Circuit Judges*.

WALLACH, *Circuit Judge*.

In this Government contracts case, Croman Corporation ("Croman") filed a complaint at the United States Court of Federal Claims ("Claims Court") against the United States alleging that the U.S. Forest Service's ("Forest Service") evaluations of proposals in response to a solicitation for helicopter services did not have rational bases and were contrary to law. Croman subsequently filed a motion for judgment on the administrative record, which the Claims Court denied. Conversely, the Claims Court granted the Government's and Defendant-Appellee Siller Helicopters, Inc.'s[1] ("Siller") cross-motions for judgment on the administrative record. *Croman Corp. v. United States*, 106 Fed. Cl. 198, 203 (2012). Because the Forest Service's decisions had rational bases, the Claims Court's decision is affirmed.

_____

[1] Defendant-Appellees Columbia Helicopters and Siller waived oral argument and conceded their time to the Government.

BACKGROUND

A.  The 2011 Solicitation

On January 14, 2011, the Forest Service solicited proposals for thirty-four (34) line items under Solicitation No. AG–024B–S–11–9001 ("2011 Solicitation").  The 2011 Solicitation called for a negotiated procurement process pursuant to, in part, Federal Acquisition Regulation Part 15.  Each line item sought heavy or medium exclusive use helicopters for large fire support, tailored for a specific host base that met the performance specifications for operation at that base.  The 2011 Solicitation presented two sets of performance specifications, one applicable to contract line item numbers ("CLIN") 1–15, and one applicable to CLINs 16–34.  CLINs 1–15 sought helicopters with, at a minimum, heavy-lift capabilities ("Type I helicopters").  CLINs 16–34 sought helicopters with, at a minimum, medium-lift capabilities ("Type II helicopters").

The 2011 Solicitation informed offerors that the "[a]ward of helicopters for make and model will be based on best value.  The performance requirements are a minimum and the helicopter will be evaluated for overall best value considering price and other factors.  The Government will determine best value." J.A. 20028.  Offerors were also informed that the awards would "be made to those offerors whose proposals are technically acceptable and whose technical/price relationships are the most advantageous to the Government." J.A. 20264.  The 2011 Solicitation provided that "the critical factor in making any price/technical trade-off is not the spread between the technical scores, but, rather, the significance of that difference." *Id.*  The solicitation further provided:

> The significance of the spread of scores will be determined on the basis of what the difference might mean in terms of performance and what it would cost the Government to take advantage of it.  Award may not necessarily be made for technical capabilities that would appear to exceed those

needed for successful performance of the work. The Government reserves the right to make price/technical trade-offs that are in the best interest and advantageous to the Government. The Government may reject any or all offers if such action is determined to be in the best interest of the Government.

*Id.*

On October 4, 2011, the Forest Service received information concerning the anticipated cost of funding the solicited thirty-four (34) CLINs based upon the proposals received in response to the 2011 Solicitation. Due to budget concerns and based on previous analysis, the Forest Service re-evaluated the need for the equipment and services solicited and determined the optimum number of helicopters to be thirty (30). As a result, it was recommended that only thirty (30) of the thirty-four (34) CLINs of the 2011 Solicitation be awarded.

The Technical Evaluation Team ("TET") thus eliminated CLINs 21, 22, 27, and 34 from the evaluation process. The TET provided the following rationale for its decision in a TET Consensus Report:

> Due to budget constraints and the desire by the National Office to evaluate Water Scooper aircraft in FY 12, a diminution to the total amount of line items from Thirty-four (34) to Thirty (30) line items was incorporated into the TET's consensus recommendation . . . . [A] minimum of thirty (30) helicopters with a cap of thirty four (34) was determined to be the most efficient and cost effective to contract as Exclusive Use . . . . Line items 21, 22, 27 & 34 were identified for reduction due to staffing issues and the aircraft locations.

J.A. 20304. The cancelled CLINs 21, 22, 27, and 34 would have solicited Type I or Type II helicopters for host bases in California and Oregon. Following the cancellation of

these four CLINs, the Forest Service considered forty-seven (47) aircraft for the award of thirty (30) contracts.

### B.  The Technical Evaluation Process

The technical factors listed in the 2011 Solicitation were (1) mandatory documentation, (2) aircraft performance, (3) safety/risk management ("safety/risk"), (4) past performance, and (5) organizational experience.  The 2011 Solicitation emphasized that these non-price factors "when combined, [were] *significantly more important than price* in the award decision." J.A. 20264 (emphasis in original).  The following language in the 2011 Solicitation explained how the Forest Service would evaluate technical proposals:

> Mandatory Documentation is a pass/fail factor. The Government will first determine whether a proposal has met the Mandatory Documentation requirements. If it has not, it will be eliminated from further consideration. If the Mandatory Documentation requirements are satisfied, the Government will next determine whether Aircraft Performance is acceptable (pass) or unacceptable (fail). Proposals that pass will next receive qualitative evaluations for Aircraft Performance and for each of the remaining three technical evaluation factors.

J.A. 20262.

### C.  The Price Evaluation Process

To determine the total price, "the Government would add (1) the price for the base year, (2) the prices for the option periods, and (3) the flight rate multiplied by the estimated flight hours." *Croman Corp.*, 106 Fed. Cl. at 204. The 2011 Solicitation also stated that the price proposals would be evaluated "to determine reasonableness and to determine the demonstrated understanding of the level of effort needed to successfully perform the service." J.A. 20257. The price proposals would also be

evaluated using a "Best Value" formula set forth in the 2011 solicitation. It was further provided that "[t]he 'Best Value' formula computes the amount it would cost to transport a pound of product for the specific helicopter being offered" and would "be used to make trade-off determinations to measure aircraft efficiencies of make and models of helicopters offered." J.A. 20257.

## D. The Optimization Model

In making award recommendations to the Contracting Officer ("CO"), the TET considered the results of a computerized optimization model ("OM"), which generated recommendations upon considering factors related to the technical and price evaluation process. The Forest Service has explained that the OM assists the agency in its evaluation by providing a mathematical solution that recommends a set of awards based upon the importance the agency assigns to the evaluation factors the Forest Service is using in a given procurement. To run the OM, the Forest Service enters all relevant bid data, including prices, into the database, and programs the OM to incorporate the percentage weights assigned to each technical evaluation factor, reflecting the relative importance of each selection criterion. The OM thus provides a recommendation that is tailored to the objectives of the procurement for which it is being employed. Accordingly, it is purported that the OM offers an "overall objective of determining, for each line item, the overall best value to the Government." J.A. 20541. The Forest Service further explained that the OM was developed to review and evaluate more efficiently, what previously had required the TET significant time and effort to conduct manually.

## E. The Forest Service's Original December 16, 2011 Award and GAO Protests

Eighteen small businesses, including Croman, submitted proposals in response to the 2011 Solicitation. In May 2011, discussions were held with the offerors and by June 2011, the discussions, including technical negotia-

tions, were concluded. Croman was not recommended for an award. Successful and unsuccessful offerors were notified on December 16, 2011.

Between December 29, 2011, and January 9, 2012, three unsuccessful offerors, including Croman, Arctic Air Service ("Arctic"), and Swanson Group Aviation ("Swanson") filed bid protests with the Government Accountability Office ("GAO"), challenging the awards of CLINs 16–34, including the Forest Service's decision to cancel CLINs 21, 22, 27, or 34. On January 27, 2012, GAO dismissed Croman's protest in its entirety. GAO, however, declined to dismiss Arctic's and Swanson's protests. Relevant to this case, Croman's protest pertained to its helicopters proposed for CLINs 16 to 34. Hence, as to CLINs 16 to 34 and to the extent relevant here, Siller, Defendant Appellee Columbia Helicopters, Inc. ("Columbia"), Firehawk Helicopters, Inc. ("Firehawk") and HeliQwest International were awarded contracts.

F. The Forest Service's Corrective Action and the Corrective Action Award

On January 30, 2012, the Forest Service notified the GAO, Swanson, and Arctic that it intended to take corrective action in response to the Arctic and Swanson protests. Specifically, "the Forest Service agreed to re-evaluate three of the five technical evaluation factors" in the 2011 Solicitation: "safety/risk, past performance, and organizational experience." *Croman Corp.*, 106 Fed. Cl. at 209. "Because the awards for CLINs 1 to 15 had not been protested, the reevaluations pertained only to CLINs 16 to 34." *Id.* On February 2, 2012, in response to the Forest Service's intent to take corrective action, GAO dismissed as moot the Arctic and Swanson protests.

The Forest Service implemented the corrective action it had proposed to GAO, and consequently, re-evaluated the offers in reference to the criteria set forth in the 2011 Solicitation. In particular, the Forest Service made best value determinations with respect to the fifteen (15)

CLINs at issue for which thirty-two (32) helicopters were proposed by sixteen (16) offerors. As it did prior to the corrective action, the OM provided recommended awards for all 15 CLINs based on technical and price evaluations. The Forest Service entered in the OM database all relevant bid data for each aircraft. In addition, the OM was programmed to incorporate the percentage weights it had assigned to each technical evaluation factor and to price, reflecting the relative importance of all of the evaluation criteria.

The OM results from the corrective action were then subject to review by the TET. The TET Chair explained the process as follows:

> On each of the previous OM summaries we have performed an abundance of confirmation checks to ensure the program is optimizing the inputs and providing the overall "Best Value" to the agency. This OM for Large Fire Support has been no different in fact we have re-checked the inputs and outputs to ensure the program is working as expected and reconfirmed its application as being a valid tool.

J.A. 20535. Following the re-evaluation, the TET determined that no changes were needed and that "the recommendations should be awarded, as modeled, without necessitating any human element changes." *Id.* The TET conveyed this determination to the CO in a TET Re-evaluation Report. The CO separately reviewed the OM results "to assure that the recommendations comply with the solicitation requirements." J.A. 20494. He concurred with the TET award recommendations and submitted them to the Source Selection Authority ("SSA"), together with seven attachments that "provide[d] the basis to understand how the award selections were determined for each line item." J.A. 20493. The SSA agreed with the TET's and CO's award recommendations and, in the Source Selection Certificate, stated: "I have reviewed the model's results and confirm that they represent best value

and prioritized aircraft performance over price, while still taking price into account." J.A. 20734.

### G.  Croman's Bid Protest at the Claims Court

Croman filed its bid protest on February 2, 2012, a few days after the Forest Service issued its notice of proposed corrective action.  Croman challenged the awards of CLINs 16–33 including those that were awarded to Siller, Columbia, and Firehawk after the corrective action.  Croman also challenged the cancellation of CLINs 21, 22, 27, and 34.  On April 27, 2012, after the Forest Service completed its corrective action in which Croman was not awarded any CLIN, Croman filed its motion for judgment upon the administrative record.  In its motion, Croman argued, among other things, that the Forest Service's award decisions were based on determinations that were irrational or contrary to law.  In addition, Croman contended "that many of the errors allegedly committed by the Forest Service in the initial evaluations and initial best-value tradeoff determinations were repeated during the corrective action." *Croman Corp.*, 106 Fed. Cl. at 212.

On May 14, 2012, three months after Croman filed its bid protest, the Forest Service issued Solicitation No. AG–024B–S–12–9025 ("2012 Solicitation"), which solicited one to four helicopters for large fire support, all to be located at the Boise National Forest host base in Idaho.  On May 18, 2012, Croman filed a supplemental brief with the Claims Court, alleging that the 2012 Solicitation seeks the same equipment and services that were the subject of the cancelled CLINs 21, 22, 27, and 34 of the 2011 Solicitation.  Croman therefore sought the Forest Service to be enjoined from procuring helicopters similar to those cancelled in the 2011 Solicitation.  Nevertheless, Croman submitted a proposal in response to the 2012 solicitation, but it received notice in June 2012 that it did not receive an award.

On August 17, 2012, the Claims Court denied Croman's motion, and granted the Government's and Siller's cross-motions for judgment upon the administrative record. The Claims Court found that the Forest Service's determinations were rational and that Croman did not suffer prejudice even if the Forest Service's determinations were made in error. Croman appeals. This court has jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

Croman raises the following issues: (1) whether the Forest Service had a reasonable basis to cancel CLINs 21, 22, 27, and 34 of the 2011 Solicitation; (2) whether the Claims Court erred in its determination that the Forest Service performed a proper tradeoff analysis; and (3) whether the Claims Court erred in its conclusion that Croman was not prejudiced by any purported error in the Forest Service's tradeoff analysis. We address these issues seriatim.

We review the grant or denial of a judgment on the administrative record without deference. *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1347 (Fed. Cir. 2013). "[T]he proper standard to be applied [to the merits of] bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2006)]: a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004) (citing *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000)).

Under this standard, a procurement decision may be set aside if it lacked a rational basis or if the agency's decision-making process involved a clear and prejudicial violation of statute, regulation, or procedure. *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085–86 (Fed. Cir. 2001). "The arbitrary and capricious standard applicable [in bid protests] is highly deferential," *Advanced Data Concepts*, 216 F.3d at 1058, and "contract-

ing officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value." *Banknote Corp.*, 365 F.3d at 1355.

### A. The Forest Service Had a Rational Basis to Cancel CLINs 21, 22, 27, and 34

Croman challenges the Claims Court's determination that the Forest Service's decision to partially cancel the 2011 Solicitation was reasonable. The Claims Court rejected Croman's argument that the Forest Service improperly cancelled the four CLINs, finding that "the agency had a rational basis for its action, notwithstanding [Croman's] arguments that simply amount to a mere disagreement with the wisdom of the agency's decision." *Croman Corp.*, 106 Fed. Cl. at 221. The Claims Court explained that the four CLINs "were cancelled due to, among other reasons, budget constraints." *Id.* It was further held that, "[t]o the extent [Croman] contends that the reasons for the cancellation were pretextual, [Croman] has not met its burden of providing clear and convincing evidence to demonstrate such." *Id.* (internal citations omitted).

The essence of Croman's argument is that the Forest Service, in fact, had sufficient funds for the cancelled CLINs, and that the cancellation therefore was pretextual, rendering the Forest Service's decision improper. Croman finds support in the fact that the Forest Service issued the 2012 Solicitation for exactly the same services cancelled in the 2011 Solicitation. According to Croman, the fact that the same services were solicited within a matter of months and the fact that "the Agency received no supplemental appropriation" between October 2011 and May 2012 show that funds were actually available for the four (4) cancelled CLINs at issue. Croman argues the stated reasoning for cancellation therefore was irrational.

The Forest Service determined that it was necessary to eliminate four (4) out of thirty-four (34) CLINs from the 2011 Solicitation due to budget constraints and a potential need to evaluate a different aircraft the following fiscal year. Croman recognizes that this reasoning, if true, suffices as a basis to modify any solicitation. Croman however argues the Forest Service's alleged budgetary concerns were nonexistent. Thus, the gravamen of Croman's contention is that the Forest Service failed to act in good faith by misrepresenting the reasoning underlying the partial cancellation of the 2011 Solicitation.

The presumption that government officials act in good faith is enshrined in our jurisprudence. *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002). Government officials are presumed to "act 'conscientiously in the discharge of their duties.'" *Kalvar Corp., Inc. v. United States*, 543 F.2d 1298, 1301 (Ct. Cl. 1976) (quoting *Librach v. United States*, 147 Ct. Cl. 605, 612 (1959)). Courts have always been "loath to find to the contrary," and to induce a court to abandon the presumption of good faith dealing, "requires 'well-nigh irrefragable proof.'" *Id.* at 1301–02 (quoting *Knotts v. United States*, 128 Ct. Cl. 489, 492 (1954)). Thus, Croman must offer clear and convincing evidence that the Forest Service did not act in good faith in order to prevail on this issue. *Am-Pro Protective Agency*, 281 F.3d at 1239–40.

Here, the record simply does not support a showing that the Government cancelled CLINs 21, 22, 27 and 34 of the 2011 Solicitation in bad faith. Croman's speculations that there actually were no budgetary concerns are not enough to overcome the presumption that the Government acted in good faith. Accordingly, Croman has failed to meet its burden to show that the decision to cancel CLINs 21, 22, 27 and 34 of the 2011 Solicitation was in bad faith.

Similarly, there was nothing improper about the Forest Service's decision to issue the 2012 Solicitation con-

sisting of similar helicopters and services. Indeed, Croman does not challenge the 2012 Solicitation, but rather, contends the Forest Service should have reinstated the cancelled CLINs instead of issuing a new solicitation, which would have required the Forest Service to consider Croman's proposals anew. According to Croman, the Forest Service's decision to re-solicit was arbitrary and capricious.

In reviewing the Forest Service's exercise of discretion, this court has articulated relevant factors as general guidelines in determining whether the Forest Service's actions were arbitrary, capricious, or an abuse of its discretion. *Prineville Sawmill Co., Inc. v. United States*, 859 F.2d 905, 911 (Fed. Cir. 1988). "'[R]elevant factors include: subjective bad faith on the part of the officials; the absence of a reasonable basis for the administrative decision; the amount of discretion entrusted to the procurement officials by applicable statutes and regulations; and proven violation of pertinent statutes or regulations.'" *Id.* (quoting *Keco Indus., Inc. v. United States*, 492 F.2d 1200, 1203–04 (Ct. Cl. 1974). These factors support upholding the Forest Service's cancellation and re-solicitation. As discussed above, Croman has failed to show that the partial cancellation of the 2011 Solicitation was in bad faith or lacking in rational basis. Given the level of discretion the Forest Service has to make decisions responsive to its actual needs, this court finds nothing arbitrary or capricious in the decision to cancel and re-solicit certain portions of the 2011 Solicitation. Thus, Croman's contentions related to CLINs 21, 22, 27, and 34 of the 2011 Solicitation fail in their entirety.

B. The Forest Service Conducted a Proper Tradeoff Analysis and as a Result, Its Award Decision Was Reasonable

Federal Acquisitions Regulation 15.308 states "[t]he source selection decision shall be documented, and the documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the

SSA, including benefits associated with additional costs." 48 C.F.R. § 15.308. Arguing that the Forest Service did not comply with this regulation and therefore erred in its tradeoff analysis, Croman contends that "the record contains no declarations or the like by the SSA as to the relative strengths he found in any proposal(s) let alone whether these relative strengths were worth paying hundreds of thousands or even millions more to obtain." Appellant's Br. 36. Rather than bare comparisons of point scores, Croman avers that a tradeoff decision must be made on the basis of the relative strengths, weaknesses, and risks associated with competing proposals. The record however demonstrates that a proper tradeoff analysis was conducted.

In the Source Selection Certification, the SSA confirmed that the award recommendations by the TET reflected the "best overall value to the Government, considering that our intent was to emphasize technical superiority (especially payload capacity) over low price." J.A. 20734. The certification further explained that the SSA had reviewed both the award recommendations and "attachments 1 through 7" in reaching his decision. *Id.* In particular, Attachments 4 and 7 include information that fully satisfies the requirements of FAR 15.308.

For example, Attachment 4, entitled "All Aircraft Optimization Model (OM) Data," includes a spreadsheet of OM evaluation results of all relevant criteria for each aircraft by CLIN. The results present a side-by-side comparison of each offer, and therefore, the strengths and weaknesses of each proposal as reflected in the ratings assigned by TET members. Hence, the attributes of each helicopter offered compared to all other helicopters proposed are easy to compare in Attachment 4.

In addition, Attachment 7, entitled "Tradeoff Analysis Comparing OM Assignments for line items 16–34 between weighted solution and 3 single objective optima," J.A. 20731, illustrates with actual tradeoffs, displaying various optional sets of award decisions. Specifically, At-

tachment 7 presents a comparison of each offer for each CLIN, illustrating the effect of trading some degree of technical superiority for a lower price, or any other tradeoff among two price factors ("Total Low Cost" and "Total Low Price Per Pound") and a technical factor ("Total Low Adjectival"). *Id.* Regarding Attachment 7, the Forest Service explained:

> The best we can do to demonstrate the tradeoffs at individual line items that were considered by the OM is to compare the set of assignments from the weighted OM solution to single objective solutions: the lowest adjectival score, the lowest total cost and the lowest price per pound. Attachment 7 provides a comparison between the weighted OM solution for line items 16–34 and the OM assignments when 100 percent of the weight is applied to each of the three single objectives.

J.A. 20545.

Nevertheless, Croman argues that Attachments 4 and 7 do not set forth specific strengths or weaknesses of the offerors' proposals. The main thrust of Croman's contention against the Forest Service's tradeoff analysis is that the analysis was not sufficiently detailed. Croman argues that the analysis produced by the OM did not conduct the detailed tradeoff analysis, which according to Croman, requires "dig[ging] deep and determin[ing] whether the relative strengths and weakness of the competing proposals are such that it is worth paying a higher price." Appellant's Br. 37. Croman contends that the "record contains no declarations or the like by the SSA as to the relative strengths he found in any proposal(s)" leading only to "bare" comparisons of point scores. *Id.* at 36, 38. Hence, according to Croman, "[p]roper SSA statements . . . would read something like this:"

> For Contract Line item __, after a review of the proposals and an assessment of the strengths and

> weaknesses and the proposed cost thereof, I con-
> clude that due to [e.g., Company X's stellar record
> of past performance, etc.] that the difference in
> technical merit between Company X's proposal
> and the others submitted is significant [and] that
> this difference in technical merit will in all likeli-
> hood result in substantially better contract per-
> formance and is worth the Agency's making an
> award to X at its slightly higher proposed [price].

Appellant's Br. 39.

However, SSA documentation, including Attachments 4 and 7, conveyed as much information, if not more, than Croman's proposed statement.[2] In addition, regarding the use of the OM, the OM provided a mathematical solution that recommended awards for all fifteen (15) CLINs based upon the importance the Forest Service assigned to the technical evaluation. The Forest Service entered in the OM database all relevant bid data for each aircraft, including the following: (1) the aircraft tail number and whether the aircraft uses a bucket or tank; (2) aircraft weight; (3) equipment weight; (4) the offeror's numerical score resulting from the technical evaluation; (5) fuel and pilot weights; and (6) proposed prices (with which the OM calculated both total contract cost and Price per Pound). Hence, the OM takes into consideration and its analysis provides for the type of detail that is warranted in these

---

[2] Croman's reliance on *Serco Inc. v. United States*, 81 Fed. Cl. 463 (2008), is unpersuasive, and in any case, that decision is not binding upon this court. *Serco* is directed to the proposition that conclusory statements that fail to reveal the agency's tradeoff calculus deprive courts of any basis upon which to review the award decisions runs afoul of the FAR. *Id.* at 497. This case is inapposite because, as discussed, the SSA based its decisions on sufficient documentation, *e.g.*, Attachments 4 and 7.

cases.   Accordingly, the Forest Service's decision not to award Croman a contract had a rational basis.[3]

### CONCLUSION

For the foregoing reasons, the Claims Court decision is affirmed.   The Forest Service's decisions were rationally based and not contrary to law.

**AFFIRMED**

---

[3]   We need not address the issue of prejudice which the Claims Court relied upon in its decision.  We affirm because the Forest Service's decision had a rational basis. *Orion Tech.*, 704 F.3d at 1350 ("An appellate court can affirm a decision of the trial court upon any ground supported by the record.").