# United States Court of Appeals for the Federal Circuit

---

**CLEVELAND ASSETS, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-2113

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00277-EDK, Judge Elaine Kaplan.

---

Decided: March 5, 2018

---

STEVEN D. GORDON, Holland & Knight, LLP, Washington, DC, argued for plaintiff-appellant. Also represented by MARY BETH BOSCO, GORDON GRIFFIN, ROBERT C. MACKICHAN, JR.; ELIZABETH JOCHUM, Tysons, VA.

KARA WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., DEBORAH A. BYNUM.

---

Before MOORE, HUGHES, and STOLL, *Circuit Judges*.

MOORE, *Circuit Judge*.

Cleveland Assets, LLC appeals the United States Court of Federal Claims' ("Claims Court") order dismissing its pre-award bid protest claim and granting the government's motion for judgment on the administrative record that General Services Administration's choice of maximum rental rate in its acquisition was not arbitrary or capricious or lacking a rational basis. For the reasons discussed below, we affirm.

## BACKGROUND

The Federal Bureau of Investigation ("FBI") is currently the sole tenant in a building in Cleveland, Ohio, pursuant to a lease between Cleveland Assets and the General Services Administration ("GSA"). The current lease began on February 1, 2002, and was originally set to expire on January 31, 2012. Due to delays in securing a new lease, the existing lease with Cleveland Assets has been extended multiple times. Pursuant to the terms of the extensions, GSA has paid, and continues to pay, Cleveland Assets a penalty rate of $44.72 per rentable square foot ("PSF") since the expiration of the original 10-year period.

In accordance with 40 U.S.C. § 3307, GSA must seek the approval of the Senate Committee on Environment and Public Works and the House Committee on Transportation and Infrastructure before obligating funds on a lease exceeding an amount published at GSA's Annual Prospectus Threshold. GSA Annual Prospectus Thresholds, http://www.gsa.gov/annualprospectusthreshold. To secure consideration for approval by the congressional committees, GSA must send the congressional committees a prospectus of the proposed facility, including a brief description of the space and "an estimate of the maximum cost to the Government." 40 U.S.C. § 3307(b).

In 2009, GSA began preparing a congressional prospectus for a new lease for the Cleveland FBI office. A series of documents demonstrate GSA considered a range of rental values for inclusion in its prospectus. A November 2009 appraisal report concluded that the total gross rent for the type of facility sought by the FBI ranged from $29.48 to $50.47 PSF. An unsigned, undated draft prospectus prepared before 2010 but not approved by GSA, along with a series of other undated and unsigned documents, estimated a maximum proposed rental rate of $42.00 PSF. An undated document titled "Lease Project Data Sheet - FY 2010 Program" projected a maximum rental rate of $50.47 PSF. And a document titled "Analysis of Replacement Lease Rental Rate" set forth an estimated rental rate of $26.00 PSF.

On December 21, 2010, GSA approved a prospectus with a maximum proposed rental rate of $26.00 PSF and an escalation clause for inflation.[1] By the end of September 2011, both the United States Senate Committee on Environment and Public Works and the United States House of Representatives Committee on Transportation and Infrastructure adopted resolutions approving the prospectus at the $26.00 PSF rate.

On March 10, 2016, GSA issued a request for expressions of interest in leasing a building for the FBI's Cleveland office. GSA directly invited a subset of the responses received, including Cleveland Assets, to submit proposals to the subsequent Request for Lease Proposals No. 6OH0241 ("RLP"), which was posted on December 7, 2016. The RLP stated that, in accordance with 40 U.S.C.

---

[1]  For ease of reference, we adopt the parties' convention of referring to the maximum rental rate of $26.00 PSF, acknowledging it has since escalated for inflation.

§ 3307, GSA would "only award a lease pursuant to this RLP if the offered rental rate d[id] not exceed the Congressionally-imposed rent limitation" of $26.00 PSF. J.A. 1070. The RLP also indicated that negotiations may be conducted, and "GSA will negotiate the rental price for the initial term, any renewal periods, and any other aspect of the offer as deemed necessary." J.A. 1075. It indicated any offeror "will be provided a reasonable opportunity to submit revisions to their initial offer including any cost or price, technical, or other revisions that may result from the negotiations." *Id.* The RLP stated the lease "will be awarded to the responsible Offeror whose offer will be most advantageous to the Government," considering a combination of factors including technical quality, site characteristics, and the offeror's qualifications and past performance. *Id.* For a proposal to be considered responsive, the RLP stated it must include a proposed rental rate "under the prospectus threshold." J.A. 1077.

On February 28, 2017, the last day proposals under the RLP could be submitted, Cleveland Assets filed the suit underlying this appeal in the Claims Court. Relevant to this appeal, Count II of Cleveland Assets' complaint asserted that the RLP is unlawful because it exceeds the scope of GSA's authority to solicit offers under 40 U.S.C. § 3307. In Counts III and IV of its complaint, Cleveland Assets alleged that the rental cap of $26.00 PSF is unreasonably low, imposes an undue restriction on competition, and shifts all risk to the contractor, thereby negating the technical factors.

The Claims Court dismissed Count II. The court noted that "[i]t is unclear" whether Cleveland Assets' allegations were sufficient to establish its status as an "interested party" for the purposes of 28 U.S.C. § 1491(b), but "even assuming that such an injury has been alleged," it held Cleveland Assets failed to demonstrate that it was

within the zone of interests protected by 40 U.S.C. § 3307. *Cleveland Assets, LLC v. United States*, 132 Fed. Cl. 264, 275 (2017). The Claims Court also granted judgment on the administrative record in favor of the government on Counts III and IV because it determined that GSA did not abuse its discretion in selecting the $26.00 PSF rental cap.

Cleveland Assets timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review the Claims Court's legal determinations de novo and its factual findings for clear error. *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1252 (Fed. Cir. 2015). We review the grant or denial of a judgment on the administrative record without deference. *Croman Corp. v. United States*, 724 F.3d 1357, 1363 (Fed. Cir. 2013).

Under the Tucker Act, the Claims Court has:

jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).

Cleveland Assets argues it has standing because it is an "interested party" pursuant to 28 U.S.C. § 1491(b)(1) and *American Federation of Government Employees v. United States*, 258 F.3d 1294 (Fed. Cir. 2001). The government argues that Cleveland Assets does not fall within the zone of interests of 40 U.S.C. § 3307 because the purpose of that statute is to enable the legislative branch to manage its appropriations. The government also

argues the jurisdictional reach of § 1491(b)(1) excludes the type of challenge asserted by Cleveland Assets in Count II.

While the Claims Court dismissed Count II on prudential standing grounds, we need not reach that issue because the plain language of 28 U.S.C. § 1491(b)(1) expressly precludes Claims Court jurisdiction over Count II of the complaint. Section 1491(b)(1) only confers jurisdiction over challenges to statutes or regulations "in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1). It is a canon of statutory construction to "give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (internal quotation marks and citation omitted). In accordance with that principle, we decline to read out the meaning of "procurement" from the text of § 1491(b)(1) regarding the statutes and regulations that an interested party may challenge.

We have previously interpreted § 1491(b) to extend only to actions in which "the government at least initiated a procurement, or initiated 'the process for determining a need' for acquisition." *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008). The phrase "procurement" therefore limits the types of government action that the Claims Court has jurisdiction to review under § 1491(b). *Id.*; *see also Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010) ("[R]elief under 1491(b)(1) is unavailable outside the procurement context."). If plaintiffs could allege any statutory or regulatory violation tangentially related to a government procurement, § 1491(b)(1) jurisdiction risks expanding far beyond the procurement context.

The only statute alleged to be violated by Cleveland Assets in Count II is 40 U.S.C. § 3307, an *appropriation*, not a procurement, statute. The plain text of § 3307 demonstrates that the statute is directed to "*appropria-*

*tions* [being] made only" pursuant to approval by the specified congressional committees. 40 U.S.C. § 3307(a) (emphasis added). While the word "procurement" is nowhere to be found in the statute, "appropriation" is used eight times.

The statutory structure confirms our plain language reading of the statute. The structure of 40 U.S.C. § 3307 directs GSA how to apply for an appropriation, but it says nothing of how GSA must run its procurement once the appropriation is made. For instance, the statute explains what material must be included in the "prospectus of a proposed project," § 3307(b), the extent to which the estimated maximum cost may be increased, § 3307(c), when approval of a project may be rescinded, § 3307(d), and limitations on leasing certain types of spaces, § 3307(g). Moreover, Chapter 33 of title 40, under which § 3307 exists, generally dictates requirements for GSA's construction, alteration, and lease of government buildings, such as ensuring compliance with building codes and zoning laws. *See, e.g.*, 40 U.S.C. § 3312. But none of the surrounding statutory sections dictate GSA's procurement procedures for any such construction, alteration, or lease.

If we were to read § 3307 as a procurement statute, every appropriations bill and rider would become a potential source of challenge for any interested party under 28 U.S.C. § 1491(b)(1). We therefore affirm the Claims Court's dismissal of Count II of Cleveland Assets' complaint.

We now turn to Cleveland Assets' challenge of the Claims Court's judgment on the administrative record of Counts III and IV in favor of the government. In a bid protest case, an agency's action must be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Palladian Partners*, 783 F.3d at 1252. The arbitrary and capricious standard of review is "highly deferential," and procurement officials "have a

great deal of discretion" in their decisions, particularly when, as here, "the contract is to be awarded to the bidder or bidders that will provide the agency with the best value." *Croman*, 724 F.3d at 1363 (internal quotation marks omitted).

We see no evidence that in deciding to use a $26.00 PSF rental cap in the RLP, "the procurement official's decision lacked a rational basis" or "the procurement procedure involved a violation of regulation or procedure." *Palladian Partners*, 783 F.3d at 1252 (internal quotation marks omitted). Cleveland Assets does not dispute that one pre-solicitation and pre-prospectus document supported the $26.00 PSF figure ultimately included in the prospectus and the RLP. "In the absence of clear evidence to the contrary," the presumption of regularity allows courts to presume that "public officers have properly discharged their official duties." *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001). A pre-solicitation document supports the $26.00 PSF rental cap, thereby shifting the burden to Cleveland Assets to put forth evidence that the $26.00 PSF figure was based on improper procedure or lacked a rational basis. Cleveland Assets points to no such evidence on this record. The mere existence of other documents supporting selection of an alternate rental cap is not sufficient to show that the selection of a $26.00 PSF was arbitrary and capricious. Under our highly deferential standard of review, we affirm the Claims Court's grant of judgment on the administrative record with respect to Counts III and IV.

## CONCLUSION

For the foregoing reasons, we affirm the Claims Court's dismissal of Cleveland Assets' pre-award bid protest allegation in Count II. We also affirm the Claims Court's judgment with respect to Counts III and IV.

## **AFFIRMED**