# United States Court of Appeals for the Federal Circuit

---

**JOHN F. SHARPE,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1406

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-01087-TCW, Judge Thomas C. Wheeler.

---

Decided: August 27, 2019

---

RACHEL J. ELSBY, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, argued for plaintiff-appellant. Also represented by DEVIN S. SIKES; CAITLIN ELIZABETH OLWELL, New York, NY.

IGOR HELMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by ROBERT EDWARD KIRSCHMAN, JR., JOSEPH H. HUNT, DOUGLAS K. MICKLE; STEPHEN ROBERT STEWART, Office of the Judge Advocate General, General Litigation Division, United States Department of the Navy, Washington, DC.

---

Before TARANTO, SCHALL, and CHEN, *Circuit Judges.*

SCHALL, Circuit Judge.

John E. Sharpe is an officer in the U.S. Navy. In a decision dated February 8, 2016, the Board for Correction of Naval Records ("BCNR" or "Board") found Mr. Sharpe's 2009 separation from the service to have been unlawful. Accordingly, the Board recommended that Mr. Sharpe be returned to active duty, and the Assistant Secretary of the Navy approved the Board's recommendation. Before us now is Mr. Sharpe's appeal of the November 8, 2017 decision of the United States Court of Federal Claims that sustained the Navy's decision to deny Mr. Sharpe, upon his return to active duty, certain categories of back pay associated with his military record. *See Sharpe v. United States*, 134 Fed. Cl. 805 (2017). For the reasons set forth below, we affirm.

BACKGROUND

I

The pertinent facts are not in dispute. Mr. Sharpe checked in aboard the aircraft carrier USS Carl Vinson ("Carl Vinson") as a Public Affairs Officer ("PAO") on June 20, 2006. *Id.* at 809. At the time of his assignment to the Carl Vinson, the ship was undergoing a refueling and complex overhaul and thus was non-operational and uninhabitable. *Id.* The overhaul was "set to last during the entire pendency of Mr. Sharpe's assignment to the Carl Vinson." *Id.* Thus, Mr. Sharpe was instructed to report to the Media Department, which was located ashore on the eighth floor of the "Bank Building" attached to the Northrop Grumman Newport News complex in downtown Newport News, Virginia. *Id.* Mr. Sharpe regularly reported to this onshore location throughout the entirety of his assignment to the Carl Vinson and carried out the majority of his duties at

this location, except when he reported to a few other on-shore locations in Hampton Roads, Virginia. *Id.* At no time during his assignment did Mr. Sharpe perform any regular duties onboard the Carl Vinson or "eat, work, live, stand watch or serve any punishment aboard the Carl Vinson or any other ship." *Id.* (citing Administrative R. at 248, J.A. 1104).

In March of 2007, a reporter contacted a Media Relations Officer from the office of the U.S. Fleet Forces Public Affairs Office, inquiring about Mr. Sharpe's alleged involvement in "hate group activity." *Id.* (quoting Administrative R. at 34, J.A. 890). The next day, Mr. Sharpe was ordered to turn over his duties and report to his home in Carrollton, Virginia, as his assigned place of duty until further notice. *Id.* As a result, Mr. Sharpe began a temporary assignment to the Commander, Naval Air Forces Atlantic. *Id.* at 809–10. On March 9, 2007, the Naval Criminal Investigations Service began a formal investigation into the reporter's query, and approximately two months later, in May of 2007, Mr. Sharpe was informed that the Commanding Officer ("CO") of the Carl Vinson intended to impose a non-judicial punishment on him. *Id.* at 810. On May 16, 2007, the CO issued Mr. Sharpe a punitive letter of reprimand for two alleged violations of UCMJ Article 88, 10 U.S.C. § 888.[1] When Mr. Sharpe inquired about the

---

[1] Article 88, 10 U.S.C. § 888, states:

Any commissioned officer who uses contemptuous words against the President, the Vice President, Congress, the Secretary of Defense, the Secretary of a military department, the Secretary of Homeland Security, or the Governor or legislature of any State, Commonwealth, or possession in which he is on duty or present shall be punished as a court-martial may direct.

process for demanding a trial by court-martial, the CO informed him that, due to the "vessel exception," he had no right to make such a demand. *Id.* The "vessel exception" denies the right of a service member "attached to or embarked in a vessel" to refuse a non-judicial punishment and demand a trial by court-martial. *Id.*; 10 U.S.C. § 815(a).

On July 9, 2009, the Assistant Secretary of the Navy approved a recommendation by the Commander, Navy Personnel Command, to discharge Mr. Sharpe from the Navy. *Sharpe*, 134 Fed. Cl. at 810. Mr. Sharpe formally separated from the Navy on September 30, 2009. *Id.*

II

Mr. Sharpe submitted an application for Correction of Naval Record to the BCNR on September 28, 2012. *Id.* In his application, he requested reinstatement. He also requested that his naval record be corrected by removing all documentation pertaining to his non-judicial punishment. *Id.*; J.A. 2620–22. In addition to seeking reinstatement and correction of his record, Mr. Sharpe requested that he receive "back payment of all regular or special pay, allowances, allotments, compensation, emoluments, or other pecuniary benefits" due to him as a result of his alleged erroneous separation from the Navy. J.A. 884. In his application, Mr. Sharpe argued that the vessel exception had been improperly invoked because the dry-docked Carl Vinson was not a "vessel" and because, although he was officially assigned to the ship, he was not "attached to or embarked in a vessel," as he did not "live, eat, work, stand watch, or serve any punishment aboard" the Carl Vinson. J.A. 912; J.A. 1104.

On February 8, 2016, the BCNR recommended to the Secretary of the Navy that Mr. Sharpe's non-judicial punishment be set aside, along with its administrative consequences. *Sharpe*, 134 Fed. Cl. at 811–12; J.A. 898. In addition, the Board recommended that Mr. Sharpe be treated as if he had not been discharged but "ha[d]

continued to serve on active duty without interruption." J.A. 901. The Board also recommended that Mr. Sharpe be retroactively promoted. *Id.* In arriving at its recommendations, the BCNR noted, as Mr. Sharpe had, the significance of the Carl Vinson's non-operational status during the entirety of Mr. Sharpe's assignment. In addition, the Board observed that "neither [Mr. Sharpe's] regular place of work, nor his [non-judicial punishment] rights-advice session or . . . hearing, were aboard ship." J.A. 898. The Assistant Secretary of the Navy approved the BCNR's findings and recommendations on April 25, 2016. *Sharpe*, 134 Fed. Cl. at 812; J.A. 902.

The Navy proceeded to implement the Board's recommendations. As a result, Mr. Sharpe was issued orders to report to active duty by February 13, 2017, and to report to his new duty station in Washington, D.C. by May of 2017. *Sharpe*, 134 Fed. Cl. at 812. On May 5, 2017, Mr. Sharpe was retroactively promoted to the rank of Commander effective August 1, 2008. *Id.* Mr. Sharpe's case was then forwarded to the Defense Finance and Accounting Services ("DFAS") for calculation of the appropriate back pay to which he was entitled. J.A. 857.

A memorandum by Brian D. Bourne ("Bourne memorandum"), which was issued by the Naval Personnel Command on May 11, 2017, set forth the Personnel Command's position regarding DFAS's calculations. J.A. 858–60. First, the memorandum noted that, before his separation, Mr. Sharpe was assigned to the Carl Vinson for three years and three months, a time period that exceeded the normal twenty-four-month sea duty tour for a PAO. Thus, the memorandum stated that, "[c]ommensurate with PAO detailing policy, [Mr. Sharpe] would not have continued to serve aboard [the Carl Vinson] past 2009 and his record (including pay) should be corrected to show that his sea duty ended on 30 Sep 09." J.A. 858–59. The Bourne memorandum thus recommended that Mr. Sharpe not receive career sea pay ("CSP") or a CSP premium, since he "did not

serve aboard ship, and for constructive service purposes would not have been assigned to a ship" from October 1, 2009, to February 12, 2017. J.A. 859.[2] Next, the Bourne memorandum recommended that Mr. Sharpe receive basic allowance housing ("BAH") at the rate for Norfolk, Virginia for the period of his separation, despite a change in the home port of the Carl Vinson from Norfolk to San Diego, California, in 2010. *Id.*[3] In line with the recommendation in the Bourne memorandum, DFAS declined to pay Mr. Sharpe CSP or a CSP premium for the period of his separation. Also consistent with the Bourne memorandum, DFAS awarded Mr. Sharpe BAH at the Norfolk rather than San Diego rate for the period of his separation.

## III

While his application was pending before the BCNR, Mr. Sharpe filed suit in the Court of Federal Claims "to preserve his right to judicial review." *Sharpe*, 134 Fed. Cl. at 811 (quoting Compl. at 8). The case was stayed while the BCNR reviewed Mr. Sharpe's application. *Id.*

---

[2] As stated by the Court of Federal Claims, "CSP is an allowance for service members entitled to basic pay who are 'assigned to' and 'serving on' a ship." *Sharpe*, 134 Fed. Cl. at 818 (quoting 37 U.S.C. § 305a(e)). Additionally, "[a] CSP premium is paid to those members who serve on sea duty for over 36 consecutive months." *Id.* (citing 37 U.S.C. § 305a(c)). During the period between June 20, 2006, when he joined the Carl Vinson, and September 30, 2009, when he was separated from the Navy, Mr. Sharpe received CSP. *See Sharpe*, 134 Fed. Cl. at 819 n.8. The record does not reflect that he received a CSP premium.

[3] As the Court of Federal Claims explained, "BAH is a variable, basic housing allowance awarded to service members eligible for basic pay in order to address higher costs of living in certain geographic areas." *Sharpe*, 134 Fed. Cl. at 817 (citing 37 U.S.C. § 403(a)(1)).

Following the Board's decision and the Navy's implementation of it, proceedings resumed before the court. *Id.* at 812.

In due course, Mr. Sharpe filed a motion for summary judgment. In it, he argued that he is entitled to the BAH rate for San Diego, beginning April 1, 2010, when the Carl Vinson's home port changed. He also argued that he is entitled to CSP and a CSP premium for the period of his separation from the Navy. *Id.*[4] The government filed a cross-motion arguing (1) that judgment on the administrative record, not summary judgment, was the proper procedural vehicle, (2) that Mr. Sharpe should be judicially estopped from making inconsistent arguments before the BCNR and the Court of Federal Claims, and (3) that Mr. Sharpe is entitled only to the amounts of back pay that DFAS calculated. *Id.*

The Court of Federal Claims first determined that judgment on the administrative record was appropriate. *Id.* at 814. The court then held that, because of arguments he made before the BCNR, Mr. Sharpe was judicially estopped from seeking BAH at the rate for San Diego and from seeking CSP and a CSP premium. The basis for the court's ruling was its determination that Mr. Sharpe presented inconsistent arguments before the Board and the court. *Id.* at 814–16. The court stated:

> [Mr. Sharpe] now argues that this Court cannot ignore and must instead give full weight to the technicality of his formal assignment to the Carl Vinson, and that this "on-paper assignment" entitles him to the BAH rate for San Diego, CSP, and the CSP premium. Simply put, Mr. Sharpe urged

---

[4]    Before the Court of Federal Claims, Mr. Sharpe alleged his thirty-seventh month of consecutive sea duty began on June 21, 2009. J.A. 631.

the BCNR to ignore his technical "assignment" to the ship in order to nullify his non-judicial punishment and correct his record but now urges this Court to give full weight to that very same technical "assignment" in determining his back pay. These arguments are plainly inconsistent. It is clear that Mr. Sharpe's interests have changed, so he has changed his position accordingly.

*Id.* at 815–16 (citation and footnote omitted).

The court concluded that all three requirements for the application of judicial estoppel were met: (1) Mr. Sharpe made inconsistent arguments before the BCNR and the court relating to his status vis-à-vis the Carl Vinson; (2) Mr. Sharpe was successful in persuading the Board to accept the position he argued before it (that the Board should ignore his technical "assignment" to the Carl Vinson and recognize that he really was assigned to shore duty); and (3) absent the application of judicial estoppel, Mr. Sharpe would gain an unfair advantage in the litigation. *Id.* at 814–17; *see also New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (setting forth factors that "typically inform" the decision of whether to apply judicial estoppel).

In the alternative, the Court of Federal Claims determined that the Navy's decision to award Mr. Sharpe the BAH rate for Norfolk, Virginia, and to deny him CSP and a CSP premium was not arbitrary or capricious, or contrary to law. *Id.* at 817. Turning first to BAH, the court rejected Mr. Sharpe's argument that he should be paid the higher rate for San Diego based on his "on-paper assignment" to the Carl Vinson. The court did so on the grounds that Mr. Sharpe never moved to San Diego and that, regardless of his separation, his assignment to the Carl Vinson was set to expire in June of 2008 and he had already exceeded the

average tour length on the ship for a PAO. *Id.* at 818.[5] To award Mr. Sharpe the BAH for San Diego, the court stated, would confer on him a substantial windfall and would "defeat the very purpose behind the regulations governing BAH: to aid service members in obtaining housing in the vicinity of their permanent duty station and to help with corresponding cost-of-living expenses." *Id.* The court concluded that "the Navy's decision to place Mr. Sharpe in the same position he was in before his improper separation by paying him the BAH rate for Norfolk—which he was receiving at the time of his unlawful separation—was not arbitrary or capricious, or contrary to law; rather, it was quite reasonable." *Id.* (citing *Holley v. United States*, 33 Fed. Cl. 454 (1995), *rev'd on other grounds*, 124 F.3d 1462 (Fed. Cir. 1997); *Ulmet v. United States*, 17 Cl. Ct. 679 (1989), *aff'd* 935 F.2d 280 (Fed. Cir. 1991)).

Turning next to CSP, the Court of Federal Claims "[found] it illogical to award Mr. Sharpe CSP and [a] CSP premium when he never actually went to sea or performed any sea duties." *Id.* at 818–19. The court relied on *Boruski v. United States*, 155 F. Supp. 320 (Ct. Cl. 1957), where the court held that a service member was not entitled to "flight pay" because the member "did not participate in any aerial flight." *Sharpe*, 134 Fed. Cl. at 819 (quoting *Boruski*, 155 F. Supp. at 324). The court held it was reasonable for the Navy to deny Mr. Sharpe CSP, since he had not experienced the rigors of sea duty.

---

[5] On appeal the government contends that the reason Mr. Sharpe was not issued orders to another duty station was because, after he received non-judicial punishment, on June 17, 2008, the Navy determined that he should be administratively separated, and he underwent out-processing prior to the issuance of his separation orders on September 15, 2009. Appellee's Br. 47.

Mr. Sharpe timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I

We review the grant or denial of a judgment on the administrative record without deference. *Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1381 (Fed. Cir. 2018) (citing *Croman Corp. v. United States*, 724 F.3d 1357, 1363 (Fed. Cir. 2013)). Thus, we apply the same standard of review as the Court of Federal Claims, namely, the standard set forth in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706; *Walls v. United States*, 582 F.3d 1358, 1367 & n.11 (Fed. Cir. 2009) (observing "it has become well established that judicial review of decisions of military correction boards is conducted under the APA" and collecting cases). Under the APA, a court must set aside agency action if the plaintiff demonstrates that the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In performing this review under § 706(2)(A):

> Our scope of review is "narrow": we determine only whether [the agency] examined "the relevant data" and articulated "a satisfactory explanation" for [its] decision, "including a rational connection between the facts found and the choice made." We may not substitute our judgment for that of [the agency], but instead must confine ourselves to ensuring that [it] remained "within the bounds of reasoned decisionmaking."

*Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019) (first quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983); then

quoting *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983)).[6]

Mr. Sharpe challenges both bases for the decision of the Court of Federal Claims: (1) its application of judicial estoppel; and (2) its ruling on the merits. We turn first to Mr. Sharpe's claims with respect to BAH and CSP. Because we conclude that the Court of Federal Claims did not err in its ruling on the merits, we do not reach the issue of judicial estoppel.

## II

"Under the constructive service doctrine, 'military personnel who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation.'" *Barnick v. United States*, 591 F.3d 1372, 1379 (Fed. Cir. 2010) (quoting *Christian v. United States*, 337 F.3d 1338, 1347 (Fed. Cir. 2003)). "The basic premise of the constructive service doctrine is to 'return successful plaintiffs to the position that they would have occupied "but for" their illegal release from duty.'" *Id.* (quoting *Dilley v. Alexander*, 627 F.2d 407, 413 (D.C. Cir. 1980)). Accordingly, military pay claimants are "entitled to be placed in the same position they would have been in" but for the wrongful action they suffered, "but not in a better position." *Christian*, 337 F.3d at 1344. This approach is consistent with the fundamental principle of corrective

---

[6] We note that a discretionary decision by the Secretary of the Navy would be beyond our review. *See Dysart v. United States*, 369 F.3d 1303, 1317–18 (Fed. Cir. 2004); *Groves v. United States*, 47 F.3d 1140, 1144 (Fed. Cir. 1995); *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988). Instead, we "merely determine[] whether the procedures were followed by applying the facts to the statutory or regulatory standard." *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993).

remedies in general: "The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Wicker v. Hoppock*, 73 U.S. 94, 99 (1867); *see also Pirkl v. Wilkie*, 906 F.3d 1371, 1378 (Fed. Cir. 2018) (collecting cases).

Mr. Sharpe argues that the Court of Federal Claims erred when it upheld the Navy's decision to award him the BAH rate for Norfolk, Virginia. According to Mr. Sharpe, (1) his duty station at the time of his separation was the Carl Vinson, (2) the determination of BAH for a service member assigned to a ship is a function of the ship's home port, and (3) the Carl Vinson undisputedly moved home ports from Norfolk to San Diego on April 1, 2010. Thus, Mr. Sharpe argues, he should receive the San Diego BAH rate for the period from April 1, 2010, to February 12, 2017. Mr. Sharpe relies on *Holley*, a case in which an Army serviceman was held entitled to receive an overseas housing allowance for the entire period of his constructive active duty service, although it was "probable" that, but for his illegal discharge, he would have remained abroad for only ten more months. 33 Fed. Cl. at 457. In this vein, Mr. Sharpe contends that it was improperly speculative for the Navy and the Court of Federal Claims to infer that he would not have continued to serve on the Carl Vinson past 2009.

Next, Mr. Sharpe contends that because he was receiving CSP at the time of his separation, he should have received CSP and a CSP premium for the period of his separation, regardless of whether he was "serving on" the Carl Vinson. According to Mr. Sharpe, returning him to his prior status takes priority over whether his CSP payments were originally proper. Mr. Sharpe relies on *Groves*, arguing that it supports his contention that although the Secretary has certain discretion to award or terminate special pay, that discretion may not be exercised when a service member is denied special pay by virtue of an unlawful conviction.

The government responds that it was not arbitrary or capricious for the Navy to provide Mr. Sharpe with the BAH he was receiving at the time of his separation and that it would have created a windfall for Mr. Sharpe to receive the higher BAH rate for San Diego, where he never resided. To find otherwise, the government argues, would do more than make Mr. Sharpe "whole." Instead, it would put him in a better position than he would have been in had he not been separated. The government also contends that it is Mr. Sharpe's burden to show that he would have continued to serve on the Carl Vinson during the time of his separation, and that the Navy's determination that Mr. Sharpe would not have served on the ship for that time period is entitled to deference, citing *Voge*. Appellee's Br. 45–47 (citing 844 F.2d at 779–80). The government contends that to award Mr. Sharpe the San Diego BAH is contrary to its purpose, which is to assist service members with the cost-of-living expenses in the area within the vicinity of their permanent duty station, not to award a post-hoc windfall for servicemembers retroactively restored to duty.

Next, the government contends that the purpose of CSP and the CSP premium are to compensate service members for the arduous conditions of sea duty and separation from home and family. The government states that the fact that Mr. Sharpe was receiving CSP before his separation does not entitle him to receive it during his separation.[7]

## III

As noted, the law requires that Mr. Sharpe be placed in the same position he would have been in but for his

---

[7] Counsel for the government stated at oral argument that the Navy believes it was error for Mr. Sharpe to have received CSP before his separation. Oral Arg. at 26:18–27:06 (May 6, 2019).

wrongful separation.  At the time of his wrongful separa-
tion, Mr. Sharpe was assigned to the Carl Vinson, which
was at home port in Norfolk, Virginia.  Accordingly, the
Navy used the best approximation it had for the position
Mr. Sharpe would have been in but for his illegal separa-
tion—that position he was in before he was improperly sep-
arated—assigned to the Carl Vinson and receiving the
BAH rate for Norfolk, Virginia.

As we have previously acknowledged, the constructive
service doctrine is a "legal fiction," and it is improper for us
to speculate exactly where Mr. Sharpe's career path would
have led him but for his separation.  *See Barnick*, 591 F.3d
at 1379; *Boruski*, 155 F. Supp. at 324.  Mr. Sharpe relies on
*Holley* to support his argument that the Navy was not per-
mitted to speculate that he would have separated from the
Carl Vinson and not continued with the ship to San Diego.
However, that Mr. Sharpe was assigned to a ship whose
home port, and correspondingly, the associated BAH rate,
could change is of no moment here, where the facts make
clear that regardless of where Mr. Sharpe would have been
assigned next, he would *not* have continued to be assigned
to the Carl Vinson.  As explained by the Bourne memoran-
dum, during the relevant period, the normal length of a sea
duty tour for PAOs was twenty-four months and "commen-
surate with PAO detailing policy, [Mr. Sharpe] would not
have continued to serve aboard [the Carl Vinson] past
2009."  J.A. 858–59.  Moreover, Mr. Sharpe's original or-
ders to the ship were set to expire in June of 2008, and Mr.
Sharpe's replacement had reported to the ship by June 20,
2008.  *Sharpe*, 134 Fed. Cl. at 818; J.A. 2606.

Given the facts of this case, the Navy's decision to place
Mr. Sharpe in the same position he was in before his im-
proper separation by paying him the BAH rate for Norfolk
was not arbitrary, capricious, or contrary to law.  Rather,
we agree with the Court of Federal Claims that it was
"quite reasonable."  *Sharpe*, 134 Fed. Cl. at 818; *see also*
*Ulmet*, 17 Cl. Ct. at 710 (concluding that a wrongfully

discharged service member was entitled to "basic allowance for quarters [and] the variable housing allowance, . . . all at the appropriate rates applicable to the location where the plaintiff was assigned to duty prior to his improper release.")

That Mr. Sharpe should be placed in the "same position" does not mean that the BCNR erred when it declined to pay him CSP or a CSP premium.[8] Mr. Sharpe's reliance on *Groves* on this point is misplaced. In that case, until his trial by court-martial on charges of larceny, an orthopedic surgeon who was an officer in the Army Reserve was receiving "financial bonuses designed to attract and retain certain professionals in military service." 47 F.3d at 1142. These were in the form of Variable Special Pay, Incentive Special Pay, and Additional Special Pay. *Id.* His conviction was later set aside, and he sought back pay, allowances, and restoration to active duty. *Id.* at 1143. The Court of Federal Claims awarded him basic pay and allowances, but it denied his request for special pay because he did not demonstrate that he had satisfied the additional eligibility requirements for it. *Id.* We reversed, noting that, under 10 U.S.C. § 875(a) Groves was entitled to the restoration of "all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disproved." *Id.* at 1144. With respect to Variable Special Pay, we noted that that pay "depends solely on an officer's status on active duty under orders to active duty for at least one year," and "there is no reason to believe that [Groves] would not have continued to [receive Variable Special Pay] but for the conviction and sentence." *Id.* (quoting 37 U.S.C. § 302(a)). With respect to Incentive Special Pay and Additional Special Pay, the Secretary of the Army had discretion not to renew those forms of special

---

[8] As noted, Mr. Sharpe was receiving CSP at the time of his separation.

pay, but in Groves's case, no such discretionary decision was ever made. *Id.* We stated:

> Absent evidence that the Secretary would have otherwise denied Groves the special pay at issue, the statutory mandate to restore all rights, privileges, and property includes any special pay that Groves was receiving prior to his court-martial, *and for which he would have continued to be eligible had the conviction never occurred.*

*Id.* (emphasis added). The facts here are noticeably different. Here, unlike in *Groves*, there *is* reason to believe that Mr. Sharpe would *not* have continued to receive CSP or have received a CSP premium. Namely, for the reasons discussed above, the facts make clear that Mr. Sharpe would not have continued to be assigned to the Carl Vinson.

Whether Mr. Sharpe's original award of CSP was proper is not before us, although we note Mr. Sharpe's statements in his application to the BCNR suggest otherwise. *See, e.g.*, J.A. 912 ("I was at no relevant time attached to or embarked in a vessel within the meaning of Art. 15. *At no time* did I live, eat, work, stand watch, or serve any punishment aboard ship."). In any event, what is determinative is that Mr. Sharpe cannot claim to have been "assigned to" or "serving on" a ship during the time of his constructive service. *See Sharpe*, 134 Fed. Cl. at 818 (quoting 37 U.S.C. § 305a(e)). On this basis, the Navy's decision to deny him CSP and a CSP premium for that time period was not arbitrary, capricious, or contrary to law. Finally, like the Court of Federal Claims, we find *Boruski*, 155 F. Supp. at 324, to be instructive. As noted above, in that case, an Army officer was denied flight pay for the period of his constructive service since he did not participate in any aerial flight during that period.

CONCLUSION

For the foregoing reasons, we hold that the Court of Federal Claims properly sustained the Navy's decisions to (1) award Mr. Sharpe the BAH rate for Norfolk, Virginia, and (2) deny Mr. Sharpe CSP and a CSP premium. We therefore affirm the decision of the Court of Federal Claims.

**AFFIRMED**

COSTS

Each party shall bear its own costs.